GIRLS' INDUSTRIAL HOME, Respondent, v. J. Q. A. FRITCHEY, GUARDIAN OF ISABELLA SEMPLE, Appellant.

May 24, 1881.

1. A widowed mother has the same control over, and owes the same obligation to, her minor child as the father would have and owe if alive.

2. Where a widowed mother places her minor child with another for support, and thereafter becomes insane, her estate will be liable for necessaries furnished the child during its minority.

3. An account sued on which states the items separately is sufficiently itemized, though the exact dates are not set opposite each item, where, from the nature of the case, the dates are given as near as may be.

4. A general denial, under the Code, puts in issue the incorporation of the plaintiff, where the incorporation is not by public act and where the suit is not upon a contract made with the plaintiff under the name by which it sues. See *Bank* v. *Williamson*, 61 Mo. 259.

5. Where it appears that no question was made in the trial as to the plaintiff's incorporation and the motion for a new trial does not suggest failure of proof thereof, that the bill of exceptions does not preserve proof of such incorporation will not necessitate a reversal.

6. An objection that a corporation organized for charitable purposes cannot take pay for services rendered, is untenable, and is also inconsistent with a denial of its incorporation.

APPEAL from the St. Louis Circuit Court, BOYLE, J.
*Affirmed.*

A. W. ALEXANDER, for the appellant.

SMITH P. GALT, for the respondent.

BAKEWELL, J., delivered the opinion of the court.

The petition alleges that plaintiff is an institution incorporated under certain acts of the Legislature approved in 1855 and 1857, and set out by their title and the dates of their passage; that the objects of the institution is the providing for the children of depraved or destitute parents; that in June, 1866, Isabella Semple, then a widow, placed in the charge of defendant her minor child, Annie Semple, and then agreed to pay to plaintiff $4 a month for the board and lodging of said Annie whilst she should be under plaintiff's care; that the child remained under plaintiff's care until she died, on April 15, 1876, still a minor; that plaintiff boarded and lodged said Annie for ninety-six months, at the rate of $4 a month; that plaintiff, during that period, furnished to Annie necessary clothing reasonably worth $277.65; and paid for necessary medical attendance for her, $75; and for the necessary expenses of her funeral, $59.50; all which is set out in an account filed as an exhibit. The total charge is $796.10. The petition further alleges that Isabella Semple was declared insane by the Probate Court of the city of St. Louis, on March 22, 1876; that Fritchey is her guardian, and, as such, has in

hands the sum of $1,185.76. The answer was a general denial. The cause was tried without a jury, and there was a finding and judgment for $774.28.

The testimony showed that Mrs. Semple was, in 1866, a very poor woman ; that she placed the child in the institution of plaintiff, and agreed to pay for its board at the rate of $4 a month ; that she was to clothe the child herself; that, after the child had been there a week or two, the mother was engaged to wash at the institution, for $12 a month ; that she paid the first month's board, and no more ; that before the end of the second month the mother became insane, and was sent to the asylum, where she has remained ever since. The ladies in charge of plaintiff's institution took kind care of the child, not expecting to receive any further pay. The girl had epileptic fits. When she was twelve years old they tried to place her out ; and she was in various places for periods amounting altogether to more than a year ; but no one would keep her, on account of the fits. The articles charged in the bill of particulars were all furnished to the child. The items are for clothing, medical attendance, and funeral expenses. The clothing was the plain necessary clothing furnished to the other children in the institution. The medical charge is for giving the child electric baths, as to which the testimony is that they gave her relief; the funeral was a plain one — it cost $59.50 ; and it would have been possible to bury the poor girl, without absolute indecency, for something less than this. The insane mother was constantly visited by the charitable lady who has the management of the plaintiff's institution, and manifested a truly maternal anxiety that the funeral should be decent, and that it should be paid for. The testimony shows that the articles furnished were low in price and strictly necessary, except as to funeral expenses. The child was fed and clothed just as the other children in this charitable institution were fed and clothed.

We think that the testimony supports the judgment. The

mother is the head of the family when the father is dead. She has the same control over the minor children as he had, and we see no reason why her duties to them should not be the same. The English policy on the subject is declared by the statute of 43 Eliz., c. 2, which provides that the father and mother of poor persons shall maintain them at their own charges, if of sufficient ability. Nor do we know any reason or authority for the position assumed by counsel for defendant, that the position of a widowed mother towards her children is not in all respects that of a father, as to every obligation towards them.

There is a conflict of authority as to the ground of the liability of a parent for necessaries furnished to an infant child. Some insist that it springs from the natural duty of the parent to support his offspring; whilst others make it a question of agency and authority, and say that the parent is bound only for what is furnished with his consent, express or implied. The first is the doctrine of Kent and Parsons; the latter view has been taken in Illinois, Alabama, and Vermont. 2 Kent's Comm. 191; 1 Pars. on Con. 253; *Stanton v. Willson*, 3 Day, 37; *Edwards v. Davis*, 16 Johns. 284; *Gordon v. Potter*, 17 Vt. 348; *Hunt v. Thompson*, 3 Scam. 180; *Owen v. White*, 5 Port. 435; *Fowlkes v. Baker*, 29 Texas, 135.

In New York it is said (*Poock v. Miller*, 1 Hilt. 108; *Van Valkenberg v. Watson*, 13 Johns. 480) that a parent is under a natural obligation to furnish necessaries for his infant children, and, if he neglects to do so, a person who supplies them confers a benefit on the delinquent parent, for which the law raises an implied promise to pay on the part of such parent. If the unfortunate mother of this child had retained her reason, and left her child in this institution, where, the proof is, that all parents are expected to pay something for their children when they can possibly do so, the law under the circumstances would have implied a promise to pay for such necessary clothing as she had

agreed to furnish to the child when she placed it there, and as she neglected to furnish. And although one who has been a lunatic may avoid his express contracts, yet upon contracts implied in law, as for necessaries for his wife, his liability continues. *Pearl* v. *McDowell*, 3 J. J. Marsh. 658. And the testimony in this case shows that so far as this poor lunatic mother could manifest her will, she wished that decent necessaries should be furnished to her child, and that they should be paid for. And even if the English rule be adopted, that the mere moral obligation to maintain his child affords no inference of a promise to do so, yet, when there is some evidence that a parent has desired a stranger to furnish necessaries to his infant and helpless child, very slight circumstances will warrant the inference that the parent who is compelled by disease or the stress of circumstances for a time to abandon his child desires the stranger to continue to furnish necessaries to it at his charge, and that he assents to and authorizes this, and will pay for it if he can. The testimony in the present instance does not present a case of making a parent liable for necessaries furnished to the infant child against the parent's will. Though, on the authority of Chancellor Kent, even this might be done, for he says that " during the minority of the child, the parent is absolutely bound to provide reasonably for its maintenance and education; and he may be sued for necessaries furnished to a child under just and reasonable circumstances." 2 Kent's Comm. 191. And even where actual authority of the parent to furnish strict necessaries to the son is not directly proved, it may be implied from sufficient circumstances.

Defendant moved to strike out the bill of particulars. We think the motion was properly overruled. Dates were not put opposite each article furnished; but, from the nature of the case, it was impossible that this should be done. Every article furnished was set out in a separate item, and the dates were given in periods of six months

each.    The charge for funeral services does not seem to
have been fully allowed, as the finding is less by $22 than
the sum of all the items.

It does not appear by the bill of exceptions that the acts
of the General Assembly of the State of Missouri set out in
the petition, under which plaintiff was incorporated, were
offered in evidence.    It is contended by counsel for defend-
ant that the fact of incorporation alleged in the petition
was put in issue by the general denial; and that, for this
defect of proof, the judgment must be reversed.

At common law, a corporation might declare by its cor-
porate name without averring that it was a corporation,
or stating any facts to show its corporate existence, even
though it was incorporated by private act, and though it
was a foreign corporation.    Ang. & Ames on Corp., sect.
632, note 2.    Some of the States seem to have adopted
the common-law rule in this respect, and to hold the allega-
tion of incorporation unnecessary under the Code; and in
some States the allegation is rendered unnecessary by
statute.    *O'Donald* v. *Railroad Co.*, 14 Ind. 259; *Ryan* v.
*Bank*, 5 Kan. 658; Iowa Code 1873, sect. 2716.    Under
the Code system of pleading, however, it would seem to be
in accordance with the fundamental idea of that system
that, except where there is estoppel, or where the case is
that of a domestic corporation incorporated by public act,
the facts that give plaintiff a legal existence should be stated
in issuable shape.    And this is the view taken by Judge
Bliss.    Bliss on Code Pl., sect. 246.

Under the common-law system of pleading it was com-
monly held in this country that the general issue was an ad-
mission of a corporation capable of suing and of suing in the
particular action.    If defendants meant to insist upon the
want of a corporate capacity to sue, it was said that a special
plea in abatement or bar should be interposed; and a plea to
the merits admitted corporate capacity.    *Society* v. *Town*, 4
Pet. 480; *School* v. *Blaisdell*, 6 N. H. 197; 3 Metc. 235.;

5 Watts & S. 215. The authorities were, however, conflicting; and in New York it was held that, on the general issue, plaintiffs suing as a corporation must prove that they are so. *Bank* v. *Weed*, 19 Johns. 300; *Williams* v. *Bank*, 7 Wend. 539. Under the Code, however, there is no general issue; and the general denial is in some repects broader in its scope, and in some respects narrower, than the general issue under the old forms of pleading. Nor can the rules that governed the use of the general issue always be safely applied under the Code. It would seem that the general denial under the Code is meant to be as efficacious as a particular traverse of each averment separately. The sweeping denial is to take the place of specific denials filling the record to no purpose.

In New York, in Wisconsin, in Virginia, and perhaps in other States, a domestic corporation need not prove its existence unless the defendant pleads the want of incorporation in abatement or in bar. 2 Rev. Stats. N. Y. 477, sect. 3. And in Virginia this must be done under oath. *Crews* v. *Bank*, 31 Gratt. 348. But these are statutory provisions, and we are aware of no such statute in Missouri.

We are, therefore, of opinion that in Missouri, where the incorporation is not by public act, and where the action is not upon a contract made by defendant with plaintiff in the name by which it sues, the fact of incorporation should be averred; and, if a general denial is interposed, it should be proved.

It is held, however, that though the fact of incorporation is to be proved, yet, after a verdict in favor of plaintiffs who sue as a corporation, the court will presume that the fact of their being a corporation and capable of suing in their aggregate capacity was conceded or proved on the trial. *Land Co.* v. *Ames*, 6 Metc. 391; *Williams* v. *Bank*, 7 Wend. 539.

If ever there was a case for the application of such a rule, this is one. It is manifest that there is no question what-

ever as to the incorporation of plaintiff. It is not suggested in the motion for a new trial that there was a total failure of evidence, on this, or any other point, and we are told by counsel for respondent in his brief, that the act incorporating plaintiff and the amended act were, in fact, both read in evidence at the trial from the pages of the Session Acts of 1855 and 1857, without any objection. Under the circumstances, nothing but increased costs and additional attorney's fees, to be paid out of the small means of this insane widow, could come of a remand of the case; and it is not to be believed that defendant, as guardian of the insane person out of whose property this judgment must eventually be satisfied, can desire a reversal upon this bald technicality.

There is nothing whatever in the objection that plaintiff, being a charitable corporation, cannot take pay from such parents as are able to pay something for the support of their children. The charity is none the less a charity because it is discriminating. But the objection, which is strongly urged by defendant's counsel, is, at any rate, inconsistent with a denial that plaintiff is a corporation at all.

The judgment will be affirmed. All the judges concur.