CHARLES DOTY ET AL., Respondents, v. M. J. STEINBERG, Appellant.

St. Louis Court of Appeals, April 5, 1887.

1. INSTRUCTIONS—EVIDENCE.—Instructions based upon hypotheses not founded on the evidence are erroneous.

2. EXCESSIVE VERDICT—MISCONDUCT OF JURY—REMITTITUR.—The rendering of a verdict which is grossly excessive, and which is unwarranted by any interpretation of the evidence, can not be cured by *remittitur*, and will be set aside.

3. ——— NEW TRIAL.—The total disregard by the jury of the evidence on one branch of the case will warrant the granting of a new trial.

Appeal from the St. Louis Circuit Court, George W. Lubke, Judge.

*Reversed and remanded.*

Dyer, Lee & Ellis, for the appellant, cited: *Koeltz v. Blackman*, 46 Mo. 320; *Smith v. Dekes*, 5 Minn. 373; *Railroad v. Fulney*, 17 Gratt. 366; *Hodapp v. Sharp*, 40 Cal. 69; Sutherland on Damages, 814.

John Flournoy, for the respondents.

Thompson, J., delivered the opinion of the court.

This was an action for damages for the conversion of six sea otter skins, claimed in the petition to be "of unusually large size and quality." The damages claimed in the petition are one thousand eight hundred dollars. The answer admits that six sea otter skins were delivered by the plaintiff, Mrs. Doty, to the defendant in the year 1877, as charged in her petition, but sets up that they were known as "sea otter pup skins"; that they were delivered by the plaintiff to the defendant for the purpose of having the defendant send them to New York to ascertain what they were worth; that he did send them to New York for this purpose; that that they were returned to him with the information that they were not salable; that, shortly after they were returned, the defendant's store, in which they were kept, was destroyed by fire without fault or negligence on his part; that the skins were injured by the fire; that one of them was either wholly destroyed or damaged to such an extent as to be rendered worthless; that all of them were somewhat damaged, but that the defendant caused them to be renovated and put in as good condition as possible, and in the year 1883 delivered two of them to the plaintiff; and that the other three are in the defendant's possession, and he has at all times been ready, and now is ready, to deliver them to the plaintiff upon pay-

ment of reasonable charges thereon. This new matter was put in issue by a reply. A trial before a jury resulted in a verdict for $1,954.80. On motion for a new trial, the court, as the condition of allowing the verdict to stand, required the plaintiff to remit one thousand dollars, and entered judgment for the residue.

The trial occupied parts of two days. The evidence was long and conflicting. A detailed statement of it does not seem necessary for our decision. If the plaintiff's evidence, supplemented by that of the defendant, as to dates, was true, and the jury must have believed it, she delivered to the defendant, not in 1877, but in the latter part of the year, 1876, six large sea otter skins, four of which were about five feet long and about three feet wide, and two of which were somewhat smaller, which she had received as a present from her son, who had obtained them while cruising among the Aleutian Islands ; that at least four of these skins were what is known in the trade as "prime skins"; that is, skins of the grown animal, and the other two, at least, "cub skins," or skins of the half grown animal ; that these prime skins were worth in London, the nearest general market for such furs, perhaps one hundred and fifty dollars each ; that the defendant kept these skins for nearly a year, namely, until November, 1877, when his store in which they were kept was destroyed by a fire ; that thereafter he pretended that the skins had been destroyed in the fire, and in response to repeated applications to find them and deliver them to the plaintiff, excused delivery with various pretexts, until some time in 1883, when he sent to the plaintiff a small sea otter pup skin, which the plaintiff at once informed him was not one of the skins which she had delivered to him ; and, finally, that, at the trial, he brought three other sea otter pup skins into court and pretended that they were what remained of the skins which the plaintiff had delivered to him. The plaintiff's evidence showed that sea otter pup skins were worth, on an average, in New

York, about ten dollars apiece, and that prime sea otter skins, from four and a half to six feet long, and from three to three and a half feet broad, very heavy, and with the long silver hairs, well and thickly developed, were worth in New York and London, from 1876 to 1886, within from one hundred and fifty to two hundred and fifty dollars each, although exceptionally fine skins have been sold in London as high as four hundred and five hundred dollars each; that skins of the value above stated were neither cubs nor pups, but prime skins. The plaintiff's testimony also tended to show that, after the fire, the defendant had delivered the six skins to a furrier in St. Louis, named Gosselling, who found them to be in good condition, untouched and uninjured, either by fire or by water, and who dressed them and returned them to the defendant at his request. This furrier testified that the skins were four and a half or five feet long and about *a foot and a half* wide, and that they were not pup skins, though the witness did not see any white hairs in them. It should be added that the testimony as to the width of the skins being no more than a foot and a half, was contrary to all the evidence in the case, touching the dimensions of such skins. It should be added further that the evidence showed that prime sea otter skins are distinguished by long silver hairs, extending above the fur; that very few cub skins exhibit these silver hairs, and that pup skins do not have them. It ought further to be added, that, after the trial, this witness, Gosselling, made an affidavit, in support of the defendant's motion for a new trial, to the effect that the skins which were exhibited in court by the defendant were some of the six skins which he dressed. On the other hand the defendant's evidence was to the effect that he had never had such skins in his possession before, and knew nothing about their value; that when they were delivered to him he shipped them, with other articles, to a furrier in New York; that, on the first of December, 1876, he wrote to this furrier a business letter,

referring to this matter and to several other matters, which letter was put in evidence ; that, in this letter he advised his correspondent that he had shipped to him these sea otter skins at the request of a customer, for the purpose of seeing what they were worth, and what could be done with them ; that the defendant's correspondent replied to him, under date of December 5, 1876, referring to this and to the other items of business contained in his letter, and informing him that he had "examined the sea otter pups"; that they had no intrinsic value for him ; that he was overstocked and did not want to accumulate ; that they could be plucked and dyed a brown color, same as beaver or otter, and would make a sacque with, say, natural beaver trimmings, and giving the cost of making them into different articles of apparel. It also appeared that thereafter these skins were returned from New York to the defendant, and were in his house at the time of the fire ; and that, although they had been sent to the furrier after the fire, to be renovated, they were sent with a wagon load of other furs belonging to various owners ; and, in general, that the reason why the defendant had not returned them sooner was, that, after the confusion of the fire, they had been mislaid and lost track of ; that the skin which he had delivered to the plaintiff in 1883, and the three skins which he produced in court, were four of the skins which the plaintiff had delivered to him ; and that the other two had been lost or destroyed in his fire, or, possibly, stolen. The defendant's evidence tended to show that sea otter pup skins were worth eight or nine dollars apiece in New York.

In rebuttal, three witnesses for the plaintiff, namely, the plaintiff herself, her son, who gave her the skins, and General McNeil, formerly a furrier, who had inspected the skins at the plaintiff's house before she had delivered them to the defendant, testified in positive terms that the four skins produced in court were not the skins which the plaintiff had delivered to the defendant ;

although General McNiel would not be positive that the two smaller skins might not be among the four produced in court.

I. The court gave the following instruction at the request of the plaintiff: "The jury are instructed by the court to find for the plaintiff, if, from the evidence, they believe that the six furs of the plaintiff were saved from the fire which destroyed the building occupied by the defendant, and thereafter the defendant, on demand of the plaintiff, refused to return said furs to the plaintiff. And the measure of the plaintiff's damages, in the event the jury find for the plaintiff as to any or all of the said furs, will be the reasonable market value of the said furs in St. Louis, or, if there was no market there, then at the market for the said furs nearest to St. Louis, at the time when the defendant so refused to return said furs, and interest thereon at six per centum per annum, from the commencement of the suit to this date."

Concerning this instruction, it should be stated that there was no evidence whatever in the record as to "the reasonable market value of the said furs in St. Louis," and all the evidence showed that such furs had no market value in this city. In so far as it contained this element, it submitted to the jury an hypothesis in respect of the measure of damages, as to which there was no evidence—a circumstance which might not be regarded as important in view of the evidence, but for the extraordinary award of damages which the jury made.

II. The court refused the following instruction, requested by the defendant: "The court instructs the jury that, if they find from the evidence that any of the furs now in possession of the defendant and shown to the jury, are the furs received by him from the plaintiff, and if they find that the defendant has any just claim against the said furs for costs paid by him in shipping the said furs, or for storage thereon, then the plaintiff is

not entitled to recover in this action the value of the said furs.''

The court, however, gave this instruction, after adding thereto the following words: ''Unless the jury believe from the evidence that the defendant absolutely refused to surrender said furs to the plaintiff.''

This instruction seems to embody two errors, one of them working against the plaintiff and the other against the defendant. The instruction, as requested, might have been refused on the ground that there was not a particle of evidence in the case that the defendant had ever made any claim against the plaintiff for the costs of shipping and storing the furs, and that there was not a particle of evidence as to the value of such services. There was no evidence that the defendant had ever refused to deliver them because charges were not paid, or for any other reason, except that he did not have them, or could not find them; nor was there any evidence that the plaintiff had ever been requested to pay charges, or had ever refused to pay reasonable charges, but the evidence showed that she had offered to pay such charges. The instruction would, therefore, have put a misleading hypothesis to the jury. On the other hand, there was no evidence in the case that the defendant had ever ''absolutely refused'' to surrender to the plaintiff *the particular furs* mentioned in this instruction, namely, those which were in his possession at the trial and which had been shown to the jury. The instruction as amended, therefore, contained an additional misleading hypothesis.

III. The award of damages made by the jury can not be supported upon any rational interpretation of the evidence in the case. The trial court was right in judging that such a verdict ought not to be allowed to stand. The jury had evidently come to the conclusion, speaking plainly, that the defendant had endeavored to defraud the plaintiff out of six sea otter skins of great value, and that he had attempted, by a trick, to substitute in their

place four sea otter pup skins of little value, and to make it appear that the other two had been lost or destroyed in his fire; and, believing this, they evidently determined to punish him by assessing the great amount of damages which they returned. But, while this is true, it is very doubtful whether, in the state of the evidence in this case, the court could require the plaintiff to enter a *remittitur*, without taking upon itself the office of constructing a new verdict upon conflicting evidence. Cases of this kind may arise, where a grossly excessive verdict may be evidence of such misconduct or disqualification on the part of the jurors as deprives their verdict, upon the other elements of the case, of the value which should attach to it. We regard it as not improbable, on the evidence in this case, that the skins which were produced in court were four of the same skins which were originally delivered by the plaintiff to the defendant. A jury that could drift into such a palpable disregard of the evidence, in making up their award of damages, was unfit for the decision of the main question, depending as it did upon conflicting evidence, coming from credible witnesses on both sides. If the jury have made a mistake in their finding as to the substantial question in issue, whether the skins delivered by the plaintiff to the defendant were prime sea otter skins, or small sea otter pup skins, the prejudice to the defendant has been very great, even after the *remittitur* entered by the court; since the plaintiff's evidence shows that prime skins, as large as the plaintiff's witnesses have shown these to have been, were near fifteen times as valuable as pup skins. We incline to think that this case comes within the reasoning of the decision of the supreme court in *Koeltz v. Bleckman* (46 Mo. 320), where it was held that if a jury return a verdict which is so grossly excessive and illegal as to indicate that the defendant's side of the case has never been considered by them, a *remittitur* will not cure the error, but there must be a new trial.

IV. The St. Louis furrier, Gosselling, introduced

as a witness by the plaintiff to prove that he had dressed six sea otter skins for the defendant soon after the fire, did not give a description of the skins, it will be remembered, which came up to the description of the plaintiff's witnesses. He did not find in them the long silver hairs, which, the testimony shows, is evidence that the skin is that of the grown animal, and the presence of which gives to it its great value ; and, after the trial, he made an affidavit that he had examined the skins produced in court, and that they were a part of the lot of six sea otter skins which he had dressed for the defendant shortly after the fire, and of which he had testified as a witness in the cause. In the state of the evidence the testimony of this witness of this fact would be most material. We are not prepared to say, however, that, if other things were out of the way, we could hold that the trial court abused its discretion in refusing to grant a new trial on the faith of this affidavit; but we do say that this affidavit furnishes an additional reason moving us to the conclusion that the ends of justice will probably be better served by another trial.

It is ordered that the judgment of the circuit court be reversed and the cause remanded. Rombauer, J., concurs ; Lewis, P. J., absent.