BRIDGET MATTHEWS, Respondent, v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

### St. Louis Court of Appeals, May 3, 1887.

1. DAMAGES—PARENT AND CHILD—PLEADINGS AND PROOF.—In an action by a mother for damages for the loss of the services of an infant child, the plaintiff must allege and prove that, at the date of the accident, the child was in the service of the parent.

2. —— MEASURE OF DAMAGES.—The measure of damages of a widowed mother, for loss of her minor child's services, is the loss of service caused by the injury, less the cost of the child's support and maintenance.

3. PRACTICE—DEMURRER TO EVIDENCE.—A demurrer to evidence is properly overruled where the plaintiff has given substantial evidence tending to prove the cause of action stated.

4. —— NEGLIGENCE — CONTRIBUTORY — AFFIRMATIVE DEFENCE. Contributory negligence being a matter of affirmative defence, unless the evidence offered by the plaintiff shows such contributory negligence as prevents his recovery as a matter of law, he is entitled to go to the jury.

5. NUISANCE—NOTICE.—He who continues a nuisance which obstructs a public highway is responsible for injuries resulting from such obstruction, without proof of notice to him of its existence.

6. INSTRUCTIONS—ASSUMPTIONS.—An instruction which assumes the truth of a controverted fact is erroneous.

7. VERDICT, EXCESSIVE.—A verdict so excessive as to be unsupported by the plaintiff's evidence should be vacated as being the result of prejudice or passion.

APPEAL from the St. Louis Circuit Court, DANIEL DILLON, Judge.

*Reversed and remanded.*

S. M. BRECKINRIDGE and M. F. WATTS, for the appellant: As lessee, the defendant could not be liable, without notice, or knowledge, of the existence of the nuisance. *Pinney v. Berry*, 61 Mo. 359 ; *Dickson v. Railroad*, 71 Mo. 575 ; *Wayland v. Railroad*, 75 Mo. 548. The first instruction given for the plaintiff is erroneous. It takes from the consideration of the jury the finding of the controverted fact whether Brooklyn avenue was a public highway or not. The instruction covers the whole case, and yet omits the question of negligence on the part of the plaintiff, as well as on the part of the brother of the injured boy. *Maxwell v. Railroad*, 85 Mo. 95. The second instruction given for the plaintiff is erroneous, in that it assumes that the defendant "maintained" the structure in question ; and in that it assumes that the ordinance read in evidence applied to this structure. *Maxwell v. Railroad*, 85 Mo. 95 ; *Muirhead v. Railroad*, 19 Mo. App. 634 ; *Wilkerson v. Thompson*, 82 Mo. 317 ; *Comers v. Taylor*, 82 Mo. 341. The verdict is excessive. *Dunn v. Railroad*, 21 Mo. App. 188.

A. R. TAYLOR, for the respondent: The defendant, maintaining an obstruction in a highway, is bound to know that it is a nuisance, because it is, by law, a nui-

sance. The case of nuisances erected on private lands by preceding owners has no application to such a case. Dillon Mun. Corp. [3 Ed.] sects. 657, 660, and authorities cited; 2 Brad. [Ill.] 435.

THOMPSON, J., delivered the opinion of the court.

The plaintiff, a widow, brings this action for the damages which she has sustained through an injury received by her minor son, William, in consequence of being driven, while riding in a wagon, in the city of East St. Louis, Illinois, against a structure composing the approach to the Illinois and St. Louis bridge, alleged to be operated by the defendant. The answer is a general denial, merely. There was evidence tending to show that an elder brother of the boy, for whose injury this action was brought, named, Michael, was a driver of a baggage wagon of the St. Louis Transfer Company; that his brother and another boy were riding with him, on the seat of the wagon, about eight o'clock at night; that it was dark, and that there were no lights of any kind at, or near, the place of the accident; that the driver of the wagon attempted to drive under the structure known as the "approach" of the Illinois & St. Louis Bridge, where it crosses Brooklyn street; that the frame work of this structure was so near the surface of the street that it struck the boy, William, and his brother, Michael, breaking the leg of William, and fatally injuring Michael; that Brooklyn street had been used as a public highway of East St. Louis for twenty-six years; that the defendant is the lessee of the Illinois & St. Louis Bridge, jointly with another railway company, under a lease made about three years prior to the accident, and extending for the term of ninety-nine years; that the plaintiff was put to an expense of between two and three hundred dollars in nursing and caring for the two sons, in consequence of their injuries; that he always had, since able to work, lived with her, worked out, and given his earnings to her, and that his earning capacity

had been diminished, perhaps, one-half, in consequence of the accident. An ordinance of the city of East St. Louis, passed in 1881, prior to this accident, was put in evidence; it gave to the Illinois & St. Louis Bridge Company the right to erect its eastern approach over cross-streets and alleys, "so that the same be constructed in such a manner as to leave sufficient perpendicular space above such cross-streets for all practicable purposes, and all passages thereon." It does not distinctly appear that Brooklyn street was one of the cross-streets named therein, nor was it shown that the city of East St. Louis had power to pass the ordinance. The court overruled the demurrer to the evidence, and submitted the case to the jury, upon certain instructions, tendered by the opposing parties. Certain special interrogatories were submitted to the jury by both parties. Among those submitted by the defendant were the following, the answers given by the jury being added thereto :

"Q. What amount could the said William Matthews earn, from the time of the accident until he attained the age of twenty-one, per month, if said accident had not happened ? A. Average fifty dollars.

"Q. What amount could the said William Matthews earn, from the date of the accident, per month, until he reaches the age of twenty-one years, after the injury ? A. Average twenty-five dollars."

The court refused to submit to the jury a special interrogatory, requested by the defendant, as to how much it would cost per month to board, lodge, clothe, and maintain the said William Matthews, from the date of the accident until he should reach the age of twenty-one years. This ruling is not properly presented for decision on this appeal, because it is not assigned for error in the appellant's statement. It is, however, involved in the question of damages, and must unavoidably be considered under that head.

I. We are of opinion that the court committed no error in overruling the demurrer to the evidence. We

do not see the force of the objection, taken in this way, that there was no competent evidence tending to prove that Brooklyn street was a public highway. The evidence was the parol testimony of a witness who had lived for twenty-six years in the vicinity, and no exception was saved to the introduction of it. In this state, parol evidence of ten years' uninterrupted adverse use by the public, is sufficient to show the existence of a public highway, in a proceeding, civil or criminal, against an obstructor of the same. *Zimmerman v. Snowden*, 88 Mo. 218; *The State v. Walters*, 69 Mo. 463; *The State v. Wells*, 70 Mo. 635. Nor do we see the force of the argument, that it was not specifically proved that the defendant "operated" the bridge approach, as charged in the petition. No such question appears to have been brought specifically to the attention of the court at the trial, though the petition alleged the fact; if it had been, the omission could have been easily supplied; since, without doubt, the court, the counsel, and the whole jury knew that such was the fact; nor does it seem material, for it appeared that the defendant had held the structure under a ninety-nine year lease, for some three years, and its possession thereunder, with the attendant responsibilities in respect of public nuisances, might properly be presumed, in the absence of any countervailing evidence. The whole question of contributory negligence, both on the part of the boy who was injured, and the plaintiff, may be laid out of view, because no such defence was pleaded, as required under our remedial system, and an unavoidable inference of contributory negligence does not arise out of the plaintiff's evidence. *Evans & Howard Fire Brick Co. v. Railroad*, 21 Mo. App. 648, 656; *Thompson v. Railroad*, 51 Mo. 190; *Hicks v. Railroad*, 65 Mo. 36; *Schuerman v. Railroad*, 3 Mo. App. 565.

Nor is the doctrine that, in order to make a land owner liable for damages happening to another land owner, from a nuisance existing upon the land of the

former, prior to its purchase, he must have had *notice or knowledge* of the nuisance, at all questioned. *Pinney v. Berry*, 61 Mo. 359 ; *Dickson v. Railroad*, 71 Mo. 575. But we know of no case which applies this rule where the nuisance is not upon the premises of the land owner, but consists of an erection, excavation, or obstruction made by, or continued by, him, in the public highway. The cases which sustain actions for damages to a traveler, who, without fault on his part, is injured by coming into direct contact with such obstructions, are numerous. *Manley v. Canal Co.*, 2 Hurl. & N. 840 ; *Kessel v. Butler*, 53 N. Y. 612 ; *Fox v. Sackett*, 10 Allen, 535 ; *Nelson v. Godfrey*, 12 Ill. 20 ; *Dickey v. Telegraph Co.*, 46 Me. 483 ; *Thomas v. Telegraph Co.*, 100 Mass. 156. This list of cases might be greatly extended and applied to all sorts of nuisances endangering travel upon public highways, and, it may be added with confidence, that nowhere in these cases is the doctrine upheld, that either the original author, or the subsequent continuer, of the nuisance, must, in order to become liable for damages sustained by a traveler thereby, have had knowledge of its existence. The erecting, or the continuing, of the nuisance, is an unlawful act, and the law will not allow him to do the act, and then to escape liability, by saying that he did not know that he did it. If a railway company, for its own purpose and profit obstruct a public highway, it must erect and maintain suitable guards or barriers to protect travelers from the danger, or else pay the damages which may accrue to any one in consequence of its failure so to do. *Veazie v. Railroad*, 49 Me. 119 ; *Potter v. Bunnell*, 20 Ohio St. 150 ; *Lowell v. Railroad*, 23 Pick. 24. If, in building its railway across a public highway, it obstructs the highway, it is bound, independently of any statutory obligation, to restore it, so that it shall be reasonably safe for the traveling public. 1 Thomp. on Neg. 357, and cases cited. In the discharge of this duty, it must, at all points where its road crosses a public highway,

construct safe crossings and maintain them in suitable repair, or answer in damages for any injuries flowing from neglect of this duty. *Farley v. Railroad*, 42 Ia. 234; *Hays v. Gallagher*, 72 Pa. St. 136; *Oliver v. Railroad*, L. R. 9 Q. B. 409; *People v. Railroad*, 2 Am. Ry. Rep. 66. Unquestionably, this obligation and corresponding liability passes from lessor to lessee, from the author to the continuer of the nuisance. This was distinctly held by Judge Dillon in *Hagan's Petition* (7 Cent. Law Jour. 311). In that case, a corporation had, in constructing a railway tunnel through the city of St. Louis, cut into the side of Eighth street at one of the openings of their tunnel, and left an unguarded section of it within the limits of the street, consisting of a perpendicular walled excavation some fifteen feet deep. The plaintiff's child, playing with other boys, was pushed by them, or fell, into this excavation and was severely injured. At the time of the injury, the tunnel was in the hands of receivers appointed by the United States circuit court. A master in chancery made an award of substantial damages in favor of the father against the receivers, on the ground that the excavation was a public nuisance, and that the corporation which had built the tunnel was the author, and the receivers the continuers, of the nuisance. This report was confirmed by Judge Dillon, and the grounds on which the liability had been placed were approved, in a written opinion by him. *Hagan's Petition*, 7 Cent. Law. Jour. 311; s. c., 6 Rep. 707. That case was a stronger case for the plaintiff than this; because there, the continuers of the nuisance were but temporary custodians of the property, appointed by the court itself, and the damages were adjudged to be paid out of a trust fund.

Whether it was practicable for the defendant to maintain the framework of its bridge approach at a greater height from the street, or to guard the danger, without totally obstructing the street, does not appear,

for the defendant offered no evidence; but it was, at least, incumbent upon it to keep the place lighted at night, so as to prevent accidents of the kind under consideration.

II. The objection to the first instruction given for the plaintiff, that it assumed the existence of a controverted fact, namely, that Brooklyn street was a public highway, is regarded by my learned brethren as a good objection, but I am of opinion that it is not tenable. My colleagues are of opinion that no authority can be found in this state, for the doctrine that the court may, in instructing juries, assume facts which are controverted by the *pleadings*, but which are not controverted by the *evidence*. They reason that, in this case, the fact was denied by the answer, and not admitted by the defendant; that the burden of proof was upon the plaintiff; and that, if the view which I take is correct, the court may instruct the jury to find for the plaintiff upon any point, simply because the evidence upon that point is not contradicted. But, as in this case, the fact, though controverted on the pleadings, stood uncontroverted on the evidence, and, as there was nothing, whatever, to impugn the credibility of the witness who testified to the fact, or to cast suspicion on her testimony, the court, in my opinion, committed no prejudicial error in framing the instruction, in assuming it as proved, and in not submitting the question specially to the jury; nor do I at all agree that the law is in accordance with the view of my learned associates. On the contrary, in my opinion, the law in this state, and elsewhere, is, that it is not prejudicial error for the court, in instructing juries, to assume facts which are not controverted by the evidence. *Caldwell v. Stephens*, 57 Mo. 589, 594; *Barr v. Armstrong*, 56 Mo. 577, 589; *Mansfield v. Pollock*, 74 Mo. 185, 189; *Fields v. Railroad*, 80 Mo. 203, 206; *Carroll v. Railroad*, 88 Mo. 239, 248; *Hughes v. Monty*, 24 Ia. 499; *Heirn v. McCaughn*, 32 Miss. 17; *Lamar v. Williams*, 39 Miss. 342; *Farquhar v. Toney*, 5 Humph. 502.

III.  The objection that the instruction covers the whole case, and yet omits the question of contributory negligence, is, in the opinion of the whole court, disposed of by the statement already made, that contributory negligence was not pleaded.

IV.  In the light of the evidence, we do not regard the objection as tenable that the second instruction given for the plaintiff assumed that the defendant "maintained" the structure in question, and that it assumed that the ordinance read in evidence applied to this structure.  We take it that there was no room for controversy upon this subject, under the evidence.

V.  It is objected that the petition states no cause of action.  This objection is predicated upon the ground that, at common law, the mother of a minor son has no cause of action for the services of such a minor; that there is no obligation on the part of the mother to support the minor, and, hence, no corresponding legal right on her part to his services.  The contrary we take to be the law.  In *Guion v. Guion* (16 Mo. 52), Scott, J., in giving the opinion of the court, said : "By the common law, the father is bound to support his minor children, *and, so long as he does*, he will be entitled to their services.  On the death of the father, this duty and right devolve upon the mother, as succeeding to all the duties and obligations of her husband."  In *Girls' Industrial Home v. Fritchey* (10 Mo. App. 344), the question of the obligation of a widowed mother to support her minor child was before this court *for decision*, and this court, speaking through Bakewell, J., said: "The mother is the head of the family when the father is dead.  She has the same control over the minor children as he had ; and we see no reason why her duties to them should not be the same.  The English policy on the subject is declared by the statute of 43 Elizabeth, chapter 2, which provides that the father and mother of poor persons shall maintain them at their own charges, if of sufficient ability.  Nor do we know any

reason or authority for the position assumed by counsel for the defendant, that the position of a widowed mother towards her children is not, in all respects, that of a father, as to every obligation towards them." In that case the jurisdiction of this court was final, and the case was decided after careful consideration. In *White-head v. Railroad* (22 Mo. App. 60), the subject, though not before the court for decision, because there the mother had re-married, was incidentally discussed by Rombauer, J., and apparently overlooking our previous decision in *Girls' Industrial Home v. Fritchey* (10 Mo. App. 344), it was said by the learned judge that, "we are not aware that in this state the question has ever been passed upon by a court of last resort." We were, in the former case, a court of last resort, and whether we were or not, as our decision stands unreversed, it is binding upon us now. If, as held in that case, the widow is bound to support her minor child, she has the correlative right to his services; and such we now hold to be the law. 7 Crim. Law Mag. 23, and cases cited.

VI. My brethren instruct me to say that the court is of opinion, on the authority of *Dunn v. Railroad* (21 Mo. App. 188, 202), that the petition in this case states no ground of recovering damages in respect of loss of services, for the reason that it fails to allege that the child, William, was the servant of the plaintiff, at the time of the injury. No such allegation is made directly in the petition, and the allegation that the plaintiff lost his services is regarded by my brethren as a mere conclusion. This being the view of the court, if the plaintiff expects to recover for loss of services on another trial, it will be necessary for her to amend her petition, so as to allege in direct terms that the child was her servant, and that, by reason of the injury, she was deprived of his services.

But, while adhering to the rule laid down in *Dunn. v. Railroad* (21 Mo. App. 188, 202), I will say, for myself, that I am of opinion that the judgment in this

case ought not to be reversed for the defective statement
of the petition in this regard. I think that the fact
that the child was the plaintiff's servant, is inferen-
tially stated in her allegation of the loss of his services,
and that this statement, though defective, is cured by
the verdict. I am opposed to refined objections to plead-
ings, which do not appear to have been brought to the
attention of the trial court in time to obviate them by
amendment. In my opinion, the chief office of a plead-
ing is to give *notice*, to the opposite party, of the ground
of action or defence, so as to apprise him of what he
will have to meet, and, where an objection to a pleading
is raised for the first time in an appellate court, the
question of its sufficiency should be judged by the
*whole record*. I am, also, of opinion that objections to
defectiveness of statement in a pleading are waived by
the failure of the opposite party to object at the proper
time to the admission of evidence in support of the allega-
tion defectively made. Where such objections are season-
ably made, the opposite party will be apprised of them,
and will have the opportunity, to which he is fairly
entitled, of obviating the objection by an amendment,
making his allegation more specific and definite. In
this case no objection was made, at the trial, to the evi-
dence adduced by the plaintiff, tending to show that the
boy, William, was her servant, and the value of his
services to her. I can not doubt that the inferential alle-
gation in the petition was sufficient to apprise the defend-
ant, and did apprise the defendant, that the plaintiff
claimed, as a part of her recovery, damages, grounded
upon the loss of services. Therefore, I am of opinion
that an objection of this kind, made after verdict, ought
to be regarded as vexatious, and ought not to be coun-
tenanced in any system of remedial justice. The peti-
tion in this case, in this regard, is quite different in that
of *Dunn v. Railroad* (21 Mo. App. 188, 202). There,
there was no allegation of loss of services, direct, or infer-
ential, nor was there any attempt to give evidence fixing
the value of the child's services.

VII. We are unable, however, to discover evi-. dence in the record which will sustain the award of damages made by the jury. Such an award, we have held in a case of this kind, can not be made on the mere opinion of the jury, but there must be evidence tending to show the probable value of the services, from the time of the injury to the child's majority, and the extent to which the earning power of the minor has been diminished by the injury. *Dunn v. Railroad*, 21 Mo. App. 188, 202. But, while this is so, such evidence, like other evidence, on the question of *value*, must necessarily be, for the most part, a matter of opinion ; and it is, no doubt, a question, like the question of value generally, upon which the jury are entitled to have an opinion against the opinion of witnesses ; but, with this limitation, that the jury can not construct a verdict making a larger award of damages than that which is furnished by the testimony of witnesses in the case. In this case, the mother obviously based her opinion on the previous and present earnings of this son, and the earnings of her other sons, one living, and the one who was killed in this accident, giving it as her opinion that, but for this hurt, the average earnings of William, from the time of the accident to his majority, would be from thirty-five to forty dollars a month. The jury, it will be perceived, by recurring to their answer to a special interrogatory, as heretofore given, found that his average earnings would be fifty dollars a month. They also found that his average earning capacity had been diminished by the accident to the extent of twenty-five dollars a month ; that is, that it had been diminished by one-half. There may have been elements in the testimony of the mother and the boy, authorizing them to find that the boy's earning capacity had been diminished by one-half. But we can gather no evidence, from the record, which would place the average earning capacity of such a boy, if uninjured, during a period running from the date of the accident to his majority, at a greater rate than forty

dollars a month. This period the evidence shows to be eighty-six months. If it is assumed that the average loss of the earning capacity, for this period, was twenty dollars per month, the strongest inference is made for the plaintiff, which the evidence warrants, and this would make a probable loss of earnings to the extent of seventeen hundred and twenty dollars. The evidence fairly shows that the plaintiff was put to an expense of about two hundred and fifty dollars, by this injury to her two sons. If we divide this amount, applying one-half of it to each, we may add to the above amount the sum of one hundred and twenty-five dollars, making a total of eighteen hundred and forty-five dollars. This would have been an extreme award under the evidence which went to the jury. It would have resolved every question relating to the *quantum* of damages against the defendant; the probabilities of sickness, or being out of employment, through accident or design, or withholding his wages from his mother, and other like circumstances.

But this award of damages gives to the plaintiff the probable *gross earnings* of the minor son, without any abatement for the cost of his board, lodging, and clothing, during the period in question. The defendant asked the plaintiff, when she was testifying as a witness, what would be the cost per month for boarding, lodging, and clothing the boy, and the court excluded the question, and the defendant excepted. Moreover, the court, as already stated, refused to submit a special interrogatory to the jury, as to how much it would cost to board, lodge, clothe, and maintain the boy from the date of the accident until he should reach his majority. The evidence given by the plaintiff, as to the earnings of the boy, and as to the earnings of her other sons, referred to their gross earnings, without deducting the expenses of their living. And this was the evidence on which the award of damages, made by the jury, was constructed.

It thus appears that the award of damages is based

on erroneous principles of law, and is not even justified by the evidence which was submitted to the jury on the question. The disregard of the evidence by the jury was so plain and palpable that we are bound to say that, in coming to this conclusion, they were guilty of misconduct, which leads to the unavoidable inference that the case was not fairly tried. In such a case, it would not be a proper exercise of our powers to attempt to cure the verdict by ordering a *remittitur*, because this would be equivalent to constructing a new verdict. *Doty v. Steinberg*, 25 Mo. App. 328.

But where, as in this case, in consequence of errors of the court in antecedent rulings upon evidence touching the measure of damages, the verdict, even if conformable to the evidence which was submitted to the jury, would, nevertheless, be unwarranted by law, our duty is still more clear.

VIII. At the request of the plaintiff, the court gave the following instruction:

"2. The court instructs the jury that, under the ordinance read in evidence, the defendant had no right to maintain the bridge approach over Brooklyn avenue, except at such height as to be no obstacle to ordinary travel upon the said highway, underneath the said structure."

We do not see that this instruction could properly have been given, in the state of the evidence. In the first place, no power, in the city of East St. Louis, to pass the ordinance in question, was shown. It is an elementary principle, that municipal corporations have no powers except such as are granted by the legislature. It follows, that a person claiming rights, under an ordinance of such a corporation, must affirmatively show that the passage of the ordinance was within the power conferred upon the corporation by its charter. In the second place, we do not see any evidence in the record whether, or not, Brooklyn avenue was one of the intersecting streets named in the ordinance. It was neces-

sary that this should be shown by the plaintiff, in order to derive any right of action from the terms of the ordinance.

We must, therefore, reverse the judgment and remand the cause. In this result all the judges concur. In the different points considered, the judges concur and dissent as above stated.

ROMBAUER, J., delivered a concurring opinion.

We all concur in the result reached in the foregoing opinion. While the language used therein sufficiently separates those parts of the opinion, which express Judge Thompson's individual views, from those wherein he expresses the views of his associates, or the court, yet there is one subject of great practical importance discussed therein, which requires a detailed comment.

It has always been a rule of practice, in this state, that the court can not assume, in its instructions to the jury, the existence of controverted facts, whether such facts are controverted by the pleadings, or by the evidence. *Thompson v. Botts*, 8 Mo. 710; *Chouquette v. Barada*, 28 Mo. 491; *Merritt v. Given*, 34 Mo. 98; *Turner v. Loler*, 34 Mo. 461; *Moffatt v. Conklin*, 35 Mo. 453; *Sawyer v. Railroad*, 37 Mo. 240; *Washington Ins. Co. v. St. Mary's Seminary*, 52 Mo. 480; *Gerren v. Railroad*, 60 Mo. 405; *Peck v. Ritchey*, 66 Mo. 114; *The State v. Wheeler*, 79 Mo. 366; *Wilkerson v. Thompson*, 82 Mo. 317; *Comer v. Taylor*, 82 Mo. 347; *The State v. Hecox*, 83 Mo. 531; *Maxwell v. Railroad*, 85 Mo. 95; *Bank of North America v. Crandall*, 87 Mo. 208.

This proposition is the logical sequence of the further rule, well established, that the triers of the fact, and not the judge, have to determine the question of the credibility of witnesses in the first instance. Were it otherwise, the judge would be authorized, in every case, to instruct the jury to find an issue for the party on whom the burden of proof rests, simply because the testimony bearing on that issue is not opposed by countervailing

evidence. Such is not the law in this state, nor, to our knowledge, in any other jurisdiction.

The cases cited by Judge Thompson fail to establish a contrary proposition. In *Barr v. Armstrong* (56 Mo. 577), the instruction for the *defendant* assumed that a certain notice had been given. This was complained of as error. Judge Vories, in delivering the opinion, says: "Even the instructions asked for by the *plaintiffs* assume that notice had been given, and presented no issue in reference to that fact. The case seems to have been tried after the notice had been admitted in evidence, with the assumption that notice had been given, and this, I presume, is the reason why the court framed the instructions as it did. This court, therefore, *notwithstanding that the instructions given by the court were erroneous in that particular*, not being able to see how the plaintiffs were injured thereby, and the verdict seeming, from the evidence, clearly for the right party, will not reverse the judgment for *that technical error.*"

In *Caldwell v. Stevens* (57 Mo. 589), the instructions complained of assumed the fact that A was the child of B, concerning which the court says the evidence was clear and conclusive; there being no pretense of any contrary evidence. "Under these circumstances," says Judge Vories, "*we might not reverse the judgment for that error alone,*" and cites his former opinion in *Barr v. Armstrong.* The judgment, however, was reversed.

In *Mansfield v. Pollock* (74 Mo. 185), which was an action of ejectment, the plaintiff testified "that he had never occupied the lands in controversy," and the court (Norton, J.), held that the trial court in its instructions might have well assumed that fact against him as established since the plaintiff himself admitted it.

In *Fields v. Railroad* (80 Mo. 203, 206), the evidence was not preserved in the bill of exceptions, and the court (Norton, J.), say: "When testimony is clear and conclusive, an instruction may assume the truth of the facts sworn to, and it *will not be reversible error.*" But

since, in this state, when the evidence is not preserved in full in the record, the court can review instructions only as to the correctness of the legal propositions therein contained, it is difficult to see how even this case can be claimed as opposed to the general rule.

In *Carroll v. Railroad* (88 Mo. 248), the court (Ray, J.), in speaking of the instructions complained of, say : "There was no controversy, as we gather from the record, as to the terms upon which the deceased was received, and was being carried, at the time, upon the train ; but the controversy was only as to the *legal effect* of the stock contract, * * * and an assumption of such fact, *about which, as a matter of law, there could be no dispute*, under such circumstances, was not error, or prejudicial to the defendant."

In the case at bar, the fact assumed in the instruction of the court was, not only that Brooklyn street was a highway, but, also, that such street existed, and was a public highway, for vehicles, at the point where the accident occurred. The testimony on that subject was that of user alone—was given by one witness, and was far from clear and conclusive on the second branch of this inquiry. No just claim can be advanced, that the case can be brought, even within the *dictum* in *Fields v. Railroad* (80 Mo. 203, 206), much less within the facts of any decided case. The assumption of that fact in the instruction would, under the uniform, uninterrupted, and unquestioned decisions in this state, of itself, necessitate a reversal.

It is important to make this statement, because the question of properly framing instructions is one which trial courts have to encounter daily. As the proper administration of justice requires that cases should be tried free from error, the practice to encourage trial courts to commit them, in causes remanded for new trial, by informing them that such errors, if re-committed, will not be treated as reversible errors, is not to be commended in any case. In these views Lewis, P. J., concurs.