IRA HERRIMAN, Respondent, v. CHICAGO & ALTON RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, October 24, 1887.

1. PRACTICE—DEMURRER TO EVIDENCE—DUTY OF COURT IN PASSING UPON.—A demurrer to the evidence admits the truth of the facts testified to by the plaintiff's witnesses, and admits everything which the testimony conduces to prove, though it be but in small degree as distinguished from a "mere scintilla." And, in passing upon the demurrer, the court must make every inference of fact in favor of the plaintiff, which the evidence warrants, and which the jury might, with propriety, have inferred. And where the plaintiff's evidence makes out a *prima facie* case for him, although it be rebutted by the defendant's evidence, by what may to the court appear to be the greater weight, it is error for the trial court to take the case from the jury. In such conjuncture, it is for the jury to pass upon the weight of evidence and the credibility of the witnesses.

2. MASTER AND SERVANT—OBLIGATIONS MUTUALLY RESTING UPON THEM.—The plaintiff (servant), in accepting employment from defendant (master), in the capacity of a section hand, assumed to himself all the hazards of life and limb incident to such work, performed in the usual way, free from the interference or negligence of those placed over him. But where, as in this case, he works under the immediate supervision and direction of a superior officer, or agent, who directs the manner of executing the particular work, and the servant, without contributory negligence on his part, is injured, while obeying his superior, the company is liable, provided the conduct of the superior had in it the element of negligence, or want of proper skill. It is the plain duty of the servant, in such relation, to obey the direction and command of his superior, unless the act directed be so obviously dangerous to his

senses as to make obedience rashness, amounting to contributory negligence on his part. But contributory negligence is a matter of affirmative defence.

3. PRACTICE—INSTRUCTIONS—WHEN THE ASSUMPTION OF AN ISSUABLE FACT IS JUSTIFIED.—The assumption, in an instruction, of an issuable fact, conceded by the other party, or about which there can be no reasonable controversy, is not erroneous.

APPEAL from Audrain Circuit Court, HON. ELIJAH ROBINSON, Judge.

*Affirmed.*

Statement of case by the court.

This is an action to recover damages for personal injury. The petition alleged : "That, on said twenty-eighth day of April, 1886, said plaintiff was in the employ of the defendant as a common laborer, and was working upon the track of the defendant, and was under the control and direction of a boss, whose duty it was to direct the said plaintiff in and about his duties as such laborer, as well as a number of other employes of said defendant ; that, on said day, said boss, in the discharge of his said duties, ordered the said plaintiff, in connection with others of his said co-laborers, to remove a certain iron rail from the track of said defendant ; that said boss ordered said plaintiff and three of his co-laborers to take hold of said rail, at one end thereof, while the other end remained on the ground, and throw said end so taken hold of around in a certain direction ; that said laborers, in obedience to said command, took hold of said rail as directed, and raised the said rail from the ground, and threw the same as so ordered ; that, when said rail was so raised, the end on the ground caught under another iron rail on said railroad track, but said boss negligently and carelessly ordered said laborers to throw said rail when said end was so caught and held down ; and, by reason of the said carelessness and negligence of said boss in so ordering said rail thrown, when so caught and held down, said rail so thrown flew back and

struck this plaintiff on the foot, breaking his large toe and bruising and lacerating his foot and other toes, by reason of which he was sick and sore for the period of two months, and suffered great pain in body and mind, was put to the expense of hiring a physician and surgeon, and lost two months from his labor; wherefore plaintiff says he is damaged in the sum of one thousand dollars, for which he asks judgment and costs of this suit."

The answer tendered the general issue.

The plaintiff's evidence tended to show that at the time of his injury he was in the employ of the defendant railroad company as a section hand, working on the track near the station, at Marshall, in Saline county, under the supervision of one Benjamin, as section foreman. As the case turns mainly on the evidence of the plaintiff, we give it in his own language, as stated in the bill of exceptions : " On the day that I was hurt there were four of us working together, besides the foreman ; the railroad at that point runs east and west ; we were working just west of the depot ; Benjamin was then with us ; he directed us about the work; we were throwing a rail out of the main track ; we were up at one end of the rail ; the side-track comes in across the main track ; the guard-rail lays inside the track altogether, in the middle of the track ; we picked up the rail; one end lay between the guard-rail and the side-track rail; the foreman told us to pick it up and throw it out; we throwed it, and one end caught; the rail was twenty-four feet long ; we raised the west end of the rail and threw it north ; it lay inside the track altogether ; four of us had hold of the rail and raised the west end, the other end remaining on the ground, and walked round north ; the foreman was standing ten or twelve feet behind us ; he told us to pick it up, carry it round, and throw it out; we picked the end of the rail up and carried it round and threw it out; we picked the end of the rail up and carried it round, and he told us to throw it, and to throw it heavy ; we

threw it and the end that was on the ground caught, and the rail sprang back and caught my foot, broke my big toe and the one next to it, and mashed the others up some ; I was fifteen or sixteen feet from the end that was on the ground ; there were two men between me and the other end ; I was hurt in this way : Four of us picked up the rail ; we were at the west end ; one end of the rail was on the ground, and lying between the guard-rail and the rail of the main track ; two men were between me and the end on the ground, and I could not see that end ; the boss told us to pick up the rail ; he was standing about ten feet behind us as we carried the rail around, and to our right. Just as I stepped on the rail of the track the boss said, '*throw hard.*' We threw all together, as directed, and the rail flew back and caught my foot that was resting on the rail in the track ; the end on the ground must have caught under the guard-rail, just as we threw, or was caught when the boss said throw hard ; I don't know which."

. The cross-examination showed that the plaintiff had worked before on railroads in the capacity of section hand, and that necessarily he had some familiarity with the particular character of the work he was directed to perform. He further testified as follows : "I don't know that any one said he-oh-heave, as is usual ; the boss just told us to pick up the rail and throw it out ; we hardly ever took out a rail without he told us to ; he tells us to lift up the rail ; he told us to pick up one end of the rail, and to carry it around and throw it off the track ; that is all I heard him tell ; when we took the rail round, when we were walking round, he told us to throw it, and to throw it heavy ; the end of the rail was all right when we picked it up ; the end of the rail was not then fastened ; when we got as far as he thought was right, he told us to throw it, and it bounced back and hit my foot ; I saw it was fastened after it was too late ; the spring-back threw it on top of the guard-rail ; the end must have caught somewhere, or it would not

have bounced back; we found an old rail in the track that had to be taken up; the foreman told us to pull out the spikes and take off the straps; I don't know that we turned it over; if we did, it was to get hold of it better; he told us to pick it up; we walked round north; he told us to throw it, and we did so."

For the defendant, Benjamin testified as follows: "I live at Marshall; am section foreman on the Chicago and Alton railroad, and have been for years; the business of section men is to obey the boss, put in and take out rails and ties, raise joints, and to keep up the track generally; they work under the direction of the foreman; plaintiff had been working under me about fifteen days before he got hurt; he had been doing track work; at the time he was hurt, we were working at the west switch at Marshall; the road runs east and west; the side track and switch is on the north side of the track: we were working right at the end of the switch; the rail we took out extended to the end of the switch; the rail was taken out of the north side of the track; it was twenty-four or twenty-five feet long; I had four men working there; as we were going west that morning, I found a broken rail right at the end of the switch; I told the men to go down and get a rail that would fit in there; they went and got a rail, and took the broken rail out and laid it right in the middle of the track, until they put the other rail in, and then they threw it out, and plaintiff got hurt; they brought the new rail before they took the old one out; to take the rail out, they pulled the spikes and rolled the rail to the middle of the track, then put in the new rail, then threw the old one out; that was the usual way of taking rails out; they took hold of the west end and threw the rail south; I was standing west of them about thirty feet."

Cross-examined: "I am still in the employ of the defendant, and have been ever since the accident, and for several years before; I found a broken rail, and told the men to go back and get a rail and put in there; I

told them to take out the old rail; I don't remember of telling them anything else; I stayed there while they went after the rail; I was standing round looking at the men while they were at work; I did none of the work, but directed them what to do; I told them to get a rail and put it in; did not tell them what to do with the broken rail; they knew well enough what to do with it; I may have said a little more to them, but that is all I remember; I did not tell them to pick up the west end; did not tell them to throw it round; the broken rail was in the main track on the north side; they carried the west end south; the east end was on the ground about a foot and a half south of the guard-rail; I saw them throw the rail; I did not see what caused it to come back till afterwards; I suppose it got caught, because it bounced back; I was looking at the men carrying the rail round; I was standing to the side of them, could see them plainly; could not see the rail very well, as the men were between me and the rail; after they had got far enough south I could have seen it if I had looked; the men ought not to have thrown it at all; I had frequently told them not to throw a rail, but to lay it down; I did not know they were going to throw it in time to stop them; I know they carried it to the south side; the side track was on the north side, and to throw it there might have broke the castings; I did not tell them which way to throw it; they had been working on the track long enough to know better than to throw it on the side track; after the men got the rail up in their hands I did not give them any orders at all."

There was some other evidence on both sides, some of a confirmatory, and some of a contradictory character.

On behalf of the plaintiff the court gave the following instruction:

"1. If the jury believe, from the evidence in the case, that the plaintiff was in the employ of the defendant, and in and about his labor for the defendant, was under the control and direction of a foreman, or boss,

and that while so engaged, said boss, or foreman, directed plaintiff to take hold of the rail and throw the same, as alleged in the petition, and that plaintiff did as directed, and that it was the duty of said boss to so direct, and that said rail, when so thrown, was caught under another rail, or was in a position to be caught when raised and thrown, and that said boss saw the position of said rail, or could have seen it, and that by reason thereof plaintiff was hurt, as alleged in the petition, then, their verdict will be for the plaintiff."

The court gave other instructions for the plaintiff, not material to be noticed, as they pertained only to the matter of the credibility of witnesses and the measure of damages.

On behalf of the defendant, the court gave all the instructions asked, save one in the nature of a demurrer to the evidence.

The jury returned a verdict for plaintiff, awarding him the sum of $257.40. Defendant prosecutes this appeal.

G. B. McFARLANE, for the appellant.

I. Whether negligence of the foreman can be legitimately inferred from the evidence, is a question for the court. Smith on Negligence, 40 ; *Powell v. Railroad*, 76 Mo. 80. No such inference can be drawn from the evidence, in this case, and defendant's instruction in the nature of a demurrer to the evidence should have been given.

II. A servant assumes all the ordinary risks of his employment. Plaintiff's injuries were received in the ordinary performance of his work, the risks of which were assumed when he entered defendant's service. *Renfro v. Railroad*, 86 Mo. 305.

III. It devolved upon plaintiff to allege and prove negligence. Proof of the accident and injury is not sufficient. *Schultz v. Railroad*, 36 Mo. 32 ; *Nolan v. Shickle*, 3 Mo. App. 302 ; *Stephens v. Railroad*, 86 Mo. 230.

IV.   Plaintiff's first instruction was erroneous and should not have been given. (1) It was without evidence to support it. (2) It assumed that a failure to see the position of the rail was negligence. (3) It assumed that defendant would have known, by reasonable care and proper forethought, that the rail, from its position, when raised and thrown, would have sprung back. (4) It assumed that plaintiff did not himself know the position of the rail, or that it would rebound when thrown. (5) It did not submit to the jury questions of negligence which could not be legitimately inferred from the evidence. (6) It authorized a verdict for plaintiff for alleged acts of negligence not contained in the petition.

GEO. ROBERTSON, for the respondent.

I.   Plaintiff did allege and prove negligence. Smith on Negligence, [White] *supra;* Wood Law of M. & S., sect. 383.

II.   While it is true that the servant assumes the ordinary risks of the employment, it is not true that he assumes the risks that result from the negligence of defendant, or those placed in authority over the servant. The master is bound to reasonable care, and such care as is commensurate with the circumstances, toward his servant. Wood Law of M. & S., sect. 326 ; Smith on Negligence [White's] 130.

III.   The instructions given are construed as a whole, and will be taken together. If the defects, or omissions in one instruction are supplied in another, and they are both consistent, the error in the first is remedied and no error is committed. *Karle v. Railroad*, 55 Mo. 476 ; *Whalen v. Railroad*, 60 Mo. 323 ; *Goetz v. Railroad*, 50 Mo. 472.

PHILIPS, P. J.—We are asked to review the evidence and to reverse this judgment on the ground that the evidence does not support the verdict. The rules of practice, in this respect, are now well settled. A demurrer

to the evidence admits the truth of the facts testified to by the plaintiff's witnesses, and admits everything which the testimony conduces to prove, though it be but in small degree as distinguished from a "mere scintilla." And in passing upon the demurrer the court must make every inference of fact in favor of the plaintiff, which the evidence warrants, and which the jury might, with propriety, have inferred. *Noeninger v. Vogt*, 88 Mo. 589; *Fisher v. Railroad*, 23 Mo. App. 201; *Brink v. Railroad*, 17 Mo. App. 177; *Wilson v. Board of Education*, 63 Mo. 136. And where the plaintiff's evidence makes out a *prima facie* case for him, although it be rebutted by the defendant's evidence, by what may, to the court, appear to be the greater weight, it is error for the trial court to take the case from the jury. In such conjuncture it is the province of the jury to pass upon the weight of evidence and the credibility of the witnesses. *Wood v. Insurance Company*, 50 Mo. 112.

I.   It is true that the plaintiff, in accepting employment from defendant in the capacity of a section hand, assumed to himself all the risks and hazards of life and limb incident to such work, performed in the usual way, free from the interference or negligence of those placed over him. But where, as in this case, he works under the immediate supervision and direction of a superior officer, or agent, who directs the manner of executing the particular work, and the servant, without contributory negligence on his part, is injured while obeying his superior, the company is liable, provided the conduct of the superior had in it the element of negligence or want of proper skill. It is the plain duty of the servant, in such relation, to obey the direction and command of his superior, unless the act directed be so obviously dangerous to his senses as to make obedience rashness, amounting to contributory negligence on his part.

Crediting, as we must for the purpose of this discussion, the testimony of the plaintiff, the handling of such a ponderous rail was necessarily attended with

some risk. So much so that the foreman himself testified, in effect, that such a rail should never be thrown, but laid down, and, therefore, he had warned his men against the act. Knowing, as the foreman admits he did, that to throw the rail might be attended with bad consequences, if he did command the men to lift it up and throw it "hard," he was guilty of culpable negligence. His relative position to the rail at the instant was such, crediting the plaintiff's testimony, as to have enabled him to see the manner of the handling, and the condition of the stationary end of the rail. It was a question for the jury to answer, if he was so situated and looking on, and knowing the danger of handling the rail thrown, whether he would not even have been derelict in duty to his employes had he remained silent. Situated as the plaintiff was, with one or more men between him and the stationary end of the rail, and having the right to infer from the position of the foreman that he could probably see and know whether the stationary end was so detached as to make it safe to throw, he was justified in relying upon the vantage ground, as well as the superior experience and skill, of his overseer ; and this, even though the plaintiff may have known from experience or observation that usually it was unsafe to throw the rail as he did. These are well-established rules of law as they stand to the plainest reason. *Keegan v. Kavanaugh*, 62 Mo. 230 ; *Cummings v. Collins*, 61 Mo. 520 ; *Stephens v. Railroad*, 86 Mo. 221 ; *Crane v. Railroad*, 86 Mo. 588 ; *Dowling v. Allen*, 74 Mo. 13 ; Wood on Master and Servant, sects. 352, 354, 387 ; *Reed v. Northfield*, 13 Pick. 98. And in all such cases, where there is any substantial doubt as to the servant's knowledge of the particular peril, a demurrer to the evidence is not permissible. Contributory negligence is a matter of affirmative defence. *Matthew v. Railroad*, 26 Mo. App. 75 ; *Petty v. Railroad*, 88 Mo. 306. The demurrer to the evidence was properly overruled, especially so when being in-

terposed after the evidence of the foreman had been in-
troduced by the defendant.

II. Criticism is made upon the first instruction
given on behalf of the plaintiff. It is alleged against it
that it did not leave the question of negligence to the
jury, but assumed, as matter of law, that the order of the
foreman was negligently given, if the rail, when thrown
was caught under another rail, or was in a position to be
caught. The instruction goes further, and required
"that said boss saw the position of said rail, or could have
seen it," etc. This instruction under a different state of
facts would be obnoxious to the objection interposed. But
in view of the defendant's own evidence, to the effect
that the foreman knew it was not safe to throw the rail
at all, and, therefore, he had frequently advised his men
not to throw a rail under such circumstances, it would
seem that it was no longer a matter in dispute that it
was negligence to "direct plaintiff to take hold of the
rail and throw the same;" especially, when "said rail
so thrown was caught under another rail, or was in a
position to be caught when raised and thrown." The
assumption in an instruction of an issuable fact conceded
by the other party, or about which there can be no
reasonable controversy, is not erroneous. *Field v.
Railroad*, 80 Mo. 206, and cas. cit. So it was held in
*Hall v. Railroad* (74 Mo. 298), that an instruction de-
claring the duties of a section foreman to be what he,
in effect, testified they were, is not objectionable, there
being no contradictory evidence.

The defendant not having tendered any issue in its
answer as to plaintiff's contributory negligence, and
there being little, if any, evidence to support it, and yet
having had the full benefit of such matter in an
instruction given it by the court, the criticism made
on plaintiff's instruction, that it should have been
qualified by submitting to the jury the question of
plaintiff's negligence comes with little tolerance or
force.

III.   While we feel constrained to say that plaintiff's cause was much impaired by the defendant's evidence, and the weight of evidence in our opinion was with the defendant, we cannot invade the province and usurp the function of the jury to pass on the weight of evidence and the credibility of the witnesses.   The judge should keep out of the jury-box.

It follows that the judgment of the circuit court should be affirmed ; the other judges concurring, it is accordingly so ordered.