CHARLES ST. CLAIR, by next friend, Respondent, v. THE MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, February 6, 1888.

1. PRACTICE—INSTRUCTION—MEANING OF THE WORDS, "COMPEL" AND "FORCE."—In its ordinary signification the word, "compel," implies force or violence, and has in it the element of irresistibility. Employed in an instruction it may be used interchangeably with the word, "force."

2. ——— EVIDENCE LIMITED TO ISSUES—CASE ADJUDGED.—Where the issue of contributory negligence is not presented in the answer, as in this case, the defendant can introduce no evidence in relation to it.

3. —— Demurrer to Evidence — When Evidence Must go to Jury.—The trial court could not sustain a demurrer to the plaintiff's cause, predicated upon the defendant's evidence ; the force of this evidence, and the credibility of the witnesses, must go to the jury.

4. —— Verdict — Misconduct of Jury — Excessive Damages— Case Adjudged.—Affidavits to the effect that the jury reached a verdict by aggregating twelve different sums and dividing by twelve, the quotient corresponding with the verdict, are not sufficient to impeach the verdict. There was sufficient evidence in this case to warrant the jury in awarding punitive damages, and they were not limited to the physical injuries done to plaintiff.

Appeal from Jackson Circuit Court, Hon. James H. Slover, Judge.

*Affirmed.*

Statement of case by the court.

This is an action for personal injuries received by plaintiff while a passenger on one of defendant's passenger trains. The petition, after making the usual averments as to defendant being a railroad corporation, and a common carrier of passengers, the minority of the plaintiff, and the appointment of his mother as his next friend, stated that the defendant was, at the time in question, running a train of cars between Pleasant Hill and Independence ; that, on or about the fourth day of August, 1886, the said Charlie St. Clair, together with many others, to the number of one hundred or more, purchased of the defendant round-trip passenger tickets from the said city of Independence to the said city of Pleasant Hill and return therefrom ; that the said Charlie St. Clair entered upon, as a passenger, one of defendant's passenger cars, in the train known as the Texas night express, in charge of one Miller as conductor, to return from said city of Pleasant Hill to the said city of Independence, which said passenger train leaves said city of Pleasant Hill about 9 p. m., and that, while so upon said passenger car, he found the cars of said train, and particularly the car upon which said passengers, being colored, were required to take passage, so crowded that

the said Charlie, together with others, was compelled to, and did, undertake his passage by sitting upon the rear platform of said car, upon the south or southwestern side thereof, with his feet resting upon the steps and his left hand holding to the railing of said platform to protect him from the danger of the said situation ; that the said conductor, while engaged in collecting the tickets and fare from the passengers upon said train and car, and after collecting tickets and fare from others on the same platform with said Charlie, roughly and with force, seized and shook him, and demanded his ticket, whereupon said Charlie not immediately producing his ticket, the said conductor, with great force, carelessly, negligently, wilfully, and maliciously, seized upon his left hand and arm, breaking his hold upon the railing aforesaid, and compelled him to jump from said train, while running at a rate of speed of not less than thirty miles per hour, and so left him until discovered by his relatives and friends about 10 a. m. the next day ; that the said Charlie, being so precipitated from said train, fell and struck upon his head, shoulders, and back, and when so found, as aforesaid, was semi-unconscious ; that he was so injured about the head that bleeding at the ears was profuse, and has continued to the present time ; that he is permanently injured in and about the head, shoulders, and back, wholly unfitting him for the ordinary work, labor, and duties of one in his condition and circumstances. Wherefore, plaintiff alleges that the said Charlie has, as aforesaid, been carelessly, negligently, wilfully, and maliciously injured and damaged in the sum of ten thousand dollars, for which plaintiff asks judgment, together with costs.

The answer was a general denial.

The plaintiff's evidence tended to show that he bought a round-trip ticket for said excursion over defendant's road from Independence to Pleasant Hill and return. He went down on the morning train, and at 9 p. m., of that day, in connection with the excursionists, he took passage on the train in question to return to

Independence. The car being full, the plaintiff, with other persons of the party, stood out on the platform of the car; the plaintiff sitting down on one of the steps leading from the car, facing to the south—the train going west. When the conductor came along collecting fares, he took in the return tickets of the other boys on the platform. The plaintiff testified, as to what then occurred, as follows: "I was sitting on the platform, and the conductor came to me and said, 'Get up,' and I got up, and he said, 'where is your ticket?' I told him I lost it, and no quicker than I said that, he broke my hand loose (with which plaintiff was holding onto the railing) and gave me a shove. He pushed me off the train." On cross-examination he said: "No quicker than I said I had lost it he grabbed my hand and shoved me." He further testified that he shoved him off, and he fell on the side of his face and shoulder, in a cut, on some rocks, and was badly hurt. He crawled a short distance from the track, and remained all night under a tree. The next morning he started for Greenwood, the nearest railroad station, whither he partly rode and walked. His half-brother was hunting him, and found him on the road to Greenwood. Here they took a freight train, and returned to Independence.

Albert Jackson, one of the boys who was on the platform, testified: "The conductor came out and called for tickets; some of the boys gave him tickets, and I reached over my shoulder and gave him my ticket, and he said, 'stand back, I want to see who that is,' and he saw it was Charlie, and he took hold of his wrists and 'kind of twisted them,' and said something about 'fall off and kill yourself,' and Charlie fell off."

Eugene Ewing, one of the parties standing on the platform, testified as follows: "Well, the conductor came out then and called for tickets, and he says, 'get your tickets out here and be quick about it.' I says, 'give us time to do it,' and he came to me and Jo. Green, and came to Albert Jackson, and turned to Charlie, and I could not understand what he said to him. He was

talking to him there, and he asked him why did he get on without a ticket, and he told him that he thought he had a ticket in his pocket, and he says, 'you will have to get off,' and he says, 'get off,' and he didn't get off, and he took hold of his wrist and twisted it loose. He told him to fall and kill himself."

On cross-examination, in answer to the question : "Then Charlie jumped off?" this witness answered : "No, sir, he didn't?" Q. "How did he get off? A. The man twisted his arm loose from the banister."

Joseph Brady, another witness for the plaintiff said : "Well, we were out on the platform and the conductor came out and asked for tickets, and I gave him mine, and Albert Jackson and Eugene Ewing gave him theirs, and he went around and asked Charlie if he had a ticket, and Charlie said no, and he caught Charlie by the arm, and, says he, 'God damn you, get off here,' and he stood there and said something and then pushed Charlie off the train. Yes, sir, took hold of his arm."

On cross-examination same witness said, in answer to question: "No, he asked for his ticket and then caught him by the arm and says, 'get off here, God damn you,' and then they talked some, but I didn't understand, and then he caught him by the arm and pushed him off."

Plaintiff offered evidence as to the extent of plaintiff's injury, which showed that he was bruised about the head, and that blood ran freely from one of his ears, and that he had been disabled since from doing much work.

The defendant's evidence tended to show that this boy, when he came to the train at Pleasant Hill, manifested a disposition to steal a ride, and was twice chased by the porter of the train from a forward position on this car, and that when the car pulled out plaintiff took the position where the conductor found him, which was on, or near, the lower step of the car ; that when the conductor came along the others stood so as to conceal the plaintiff from his view, and this

porter pointed him out to the conductor. The conductor testified that, on discovering the boy there, he asked for his ticket, and that the boy at once jumped from the train; that he did not curse him, or take hold of, or shove him, as stated by the other witnesses, and that these parties standing on the platform, at the time proclaimed, just after the accident, to the other negroes in the car, that Charlie had jumped from the train. The defendant introduced physicians, who visited the plaintiff, who testified that his injuries were inconsiderable, and not of a permanent or serious character.

The court on behalf of plaintiff gave the following instruction:

"1. The court instructs the jury that the law does not require a person entering upon or into a car of a passenger train to have in his possession, or deliver to the conductor thereof, what is commonly known and spoken of as a ticket, but the law does provide that if any such person or passenger shall refuse to pay his fare, it shall be lawful for the conductor of the train to put him out of the cars, using no unnecessary force, only at some usual stopping place, or near some dwelling-house, as the conductor shall elect, and then only on stopping the train; and if you shall further find, from the evidence, that the said Charlie was forced, or compelled, by the conductor of the said train, to jump from said train, while the same was in motion, and that the said Rachel has been appointed next friend to said Charlie, you must find for the plaintiff in such sum as will fully compensate him for the injuries received, including the mental anguish, pain, and suffering, in both body and mind, from such wrongful act of the said conductor; and if you further find that said conductor acted in a wanton and cruel manner, and regardless of the life or limbs of plaintiff, you are not confined in your assessment of damages to an amount that shall simply compensate the said Charlie for the injuries received, but

may add thereto such further sum as a penalty, not to exceed in the aggregate ten thousand dollars."

The court gave for defendant the following instructions:

"2. The jury are instructed that before the plaintiff can recover in this case, you must believe and find, from a preponderance of the evidence before you, that Charlie St. Clair was thrown from one of defendant's cars by the conductor thereof, in the manner as charged in the petition."

"4. If the jury believe, from the evidence, that plaintiff received the injuries, of which he complains in his petition, by jumping or accidentally falling off one of defendant's trains, they will find for the defendant."

"5. The jury are instructed that, before, they can find any damages for permanent injury or disability, they must be reasonably satisfied, from the evidence adduced before them, that such permanent disability is reasonably certain to follow the injury."

The jury returned a verdict for plaintiff, assessing the damages at two thousand dollars. Defendant has appealed.

ADAMS & BOWLES, for the appellant.

I. The gist of the plaintiff's action, as stated in the petition, is as follows: "That while he was sitting upon one of the steps of the platform on one of the cars of defendant's passenger train, the conductor thereof demanded his ticket, whereupon, the plaintiff not immediately producing it, the said conductor, with great force, carelessly, wilfully, negligently, and maliciously, seized upon his left hand and arm, breaking his hold upon the railing, and compelled him to jump from said train, while running at a rate of speed not less than thirty miles per hour." In the plaintiff's instruction, the jury are told that if the plaintiff was forced or compelled by the conductor to jump from the train, they must find for plaintiff not only compensatory, but punitive or exemplary, damages. The appellant contends that this instruction is misleading, and was erroneous.

There is no averment in the petition that the plaintiff was forced from the train. The only force which is alleged is, that the conductor seized upon his left arm and hand, breaking his hold upon the railing. There is nothing alleged that, by the exercise of a power not resistible, the plaintiff was compelled to jump from the train. Conceding that it be true, as alleged, that the conductor did compel the plaintiff to loosen his hold upon the railing, the jumping from the train was not the natural or probable consequence of the fault charged, but was extraordinary, and not likely to have been foreseen. It is nowhere either alleged or proved that the act of plaintiff was induced by the fear of present danger from the conductor's act that justified him in encountering the peril of jumping from a rapidly moving train. In the plaintiff's instruction the jury are told that if the conductor compelled the plaintiff to jump from the train, they must find for the plaintiff. The word, "forced," is a term easily understood, but the instruction is in the conjunctive, and tells the jury that if the plaintiff was forced or compelled, then they must so find. The word, "compel," may mean physical or moral force. If the act was caused by the physical force of the conductor the defendant is liable. If by his moral force or persuasion, then the plaintiff, under the circumstances of the rapidly moving train, the darkness, etc., should have resisted it, and not taken the risk of jumping from the train. In doing so he was guilty of contributory negligence. The instruction should have defined the distinction, and told the jury in plain terms the effect and scope of the words used.

II. The plaintiff, in making out his case, clearly established his own contributory negligence, and, therefore, disproves his case; and although his contributory negligence was not pleaded, defendant's demurrer to the evidence should have been sustained. *Milburn v. Railroad*, 86 Mo. 109; *Buesching v. Gas Co.*, 73 Mo. 229. Jumping from a rapidly running train between stations, voluntarily, is negligence. *Leslie v. Railroad*, 86 Mo.

56 ; *Doss v. Railroad,* 59 Mo. 38 ; *Nelson v. Railroad,* 68 Mo. 593 ; *Kelly v. Railroad,* 70 Mo. 609.

III. The act of plaintiff in leaping from the train was not the natural or probable consequence of the fault charged against the conductor, but was extraordinary and not likely to have been foreseen. *Putnam v. Railroad,* 55 N. Y. 108 ; *Henry v. Railroad,* 76 Mo. 288 ; *Haley v. Railroad,* 21 Ia. 15 ; *Wasbery v. Railroad,* 107 Ind. 381 ; *Vimont v. Railroad,* 28 Am. & Eng. R. R. Cas. 210 ; *Railroad v. Swift,* 26 Ind. 459–476 ; *Railroad v. Aspen,* 23 Pa. St. 147. The attention of the jury should have been drawn to the legal distinction between the words, "forced" and "compelled," as used in plaintiff's instruction, in plain and unequivocal terms, and not left it to their conjecture. *Legg v. Johnson,* 23 Mo. App. 594 ; *State to use v. Laurie,* 1 Mo. App. 376 ; *Dyer v. Brannock,* 2 Mo. App. 441 ; *Hays v. Railroad,* 15 Mo. App. 584. The act of the plaintiff in jumping from the train is wholly ignored, and the court should have instructed as to that. *Wyatt v. Railroad,* 62 Mo. 410. Recovery can be had upon the case made by the pleadings only. The issues cannot be changed by an instruction. *Glass v. Galvin,* 80 Mo. 297 ; *Moffett v. Conklin,* 45 Mo. 453.

IV. The verdict of the jury, in view of the undisputed evidence as to the trivial nature of the plaintiff's injury, the utter improbability of his story, and the circumstances under which the verdict was arrived at, as disclosed by the record, shows prejudice and misconduct on the part of the jury, and should not be permitted to stand. *Carroll v. Paul,* 16 Mo. 240 ; *Spohn v. Railroad,* 87 Mo. 84 ; *Henning v. Railroad,* 57 Ill. 59.

Andrews & Lee, for the respondent.

I. The instruction complained of is as follows : "The court instructs the jury that the law does not require a person entering upon or into a car of a passenger train to have in his possession, or to deliver to the conductor thereof, what is commonly known and spoken of as

a ticket ; but the law does provide that if any such person or passenger shall refuse to pay his fare, it shall be lawful for the conductor of the train to put him out of the cars, using no unnecessary force, only at some usual stopping place, or near some dwelling-house, as the conductor shall elect, and then only on stopping the train ; and if you shall further find, from the evidence, that the said Charlie was forced, or compelled, by the conductor of the said train, to jump from said train while the same was in motion, and that the said Rachel has been appointed next friend to said Charlie, you must find for the plaintiff in such sum as will fully compensate him for the injuries received, including the mental anguish, pain, and suffering, in both body and mind, from such wrongful act of the said conductor ; and if you further find that the said conductor acted in a wanton and cruel manner, and regardless of the life or limbs of the plaintiff, you are not confined in your assessment of damages to an amount that shall simply compensate the said Charlie for injuries received, but may add thereto such further sum as a penalty, not to exceed, in the aggregate, ten thousand dollars." Those given for defendant are as follows : "2. The jury are instructed that, before the plaintiff can recover in this case, you must believe and find, from a preponderance of the evidence before you, that Charles St. Clair was thrown from one of the defendant's cars by the conductor thereof, in the manner as charged in the petition." "4. If the jury believe, from the evidence, that plaintiff received the injuries of which he complains in his petition by jumping or accidentally falling off one of defendant's trains, they will find for the defendant." "7. The jury are instructed that they are the sole judges of the weight of the testimony and of the credibility of the witnesses. And if they believe that any witness has sworn wilfully false to any material fact, they are at liberty to disregard his testimony."

II.   The record shows that there is no contributory

negligence in plaintiff's case.  The defendant did not plead or prove contributory negligence.

III.   The instruction, complained of as misleading, was not so, and certainly not when taken in connection with those numbered two, four, and seven above, which were given for defendant.  Certainly defendant has no reason to complain as to instructions.

· IV.   Defendant had a fair and impartial trial, and the judgment should be affirmed.

PHILIPS, P. J.—I.   The instruction given on behalf of the plaintiff is objected to because it told the jury to find for the plaintiff if he "was forced or compelled" to jump from the train.   The objection is lodged against the use of the word, "forced," when the petition only employed the word, "compelled."   The criticism is, that the word, "forced," implies the exercise of a power not resistible, while the word, "compelled," used in that connection in the disjunctive, was likely to convey to the mind of the jury the impression that something less than physical force, such as mere moral force or persuasion, might warrant a verdict for plaintiff.   There is too much of refinement in this verbal criticism for practical use in jury trials.   If it be conceded to defendant that the term, "compelled," implies ordinarily less physical violence than the word, "forced," the defendant cannot complain that plaintiff, by using it in the instruction, imposed upon himself the duty of proving more than his petition required.   Nor can we discover any reasonable basis for the conjecture that the employment of the two terms, disjunctively in the instruction, could have possibly misled the jury.   In its ordinary signification the word, "compel," implies force or violence, and has in it the element of irresistibility.   Web. Dic.   As employed in the instruction, it is not conceivable that it could have conveyed any other impression to the mind of the jury than that the two words were used interchangeably and meant about one and the same thing.   And to remove any reasonable ground of misapprehension, the instruction given on behalf of defendant plainly told the

jury that before plaintiff could recover they must find that he " was *thrown from defendant's car* by the conductor, in the manner charged in the petition." This left no ground for doubt in the mind of the jury as to what was meant by the words, "forced or compelled."

II. It is insisted that the evidence showed that plaintiff was guilty of contributory negligence, and that, therefore, defendant's demurrer to the evidence should have been sustained. To this there are several conclusive answers. No such issue was presented by the answer. Unless so tendered the defendant could introduce no evidence for such purpose. *Mathews v. Railroad*, 26 Mo. App. 75; *Petty v. Railroad*, 88 Mo. 306. But, say counsel, although not pleaded in the answer, yet, where plaintiff's evidence discloses the fact of his contributory negligence, it may be availed of by the defendant in a general demurrer to the evidence. Even if this be conceded, there was nothing to justify such inference by the court at the conclusion of plaintiff's evidence. The plaintiff's evidence, if credited by the jury (and with that the court had nothing to do), strongly tended to show that the conduct of the conductor was rude and violent, and that he actually employed force in shoving the plaintiff from his car while it was running at a high rate of speed, and in the night-time, and that he did not even so much as check up his train to see what had become of the passenger. It would have been palpable error had the court withdrawn the case from the jury on such evidence. The evidence tending to show that plaintiff voluntarily, or unnecessarily jumped from the train, was introduced by the defendant. The court could not sustain a demurrer to the plaintiff's cause predicated upon defendant's evidence. The force of this evidence and the credibility of the witnesses must go to the jury. *Wood v. Ins. Co.*, 50 Mo. 112; *Herriman v. Railroad*, 27 Mo. App. 443.

It is of no consequence, however, to apply these rules respecting contributory negligence to this case. The evidence offered by defendant, tending to show that

the plaintiff voluntarily jumped from the train, was admissible under the general issue, for it tended to disprove the allegation of the petition that the conductor compelled him to jump. If the conductor compelled him to jump off, the case was with the plaintiff; if the plaintiff jumped off of his own volition he had no case. This was the precise issue of fact presented in the pleadings and covered by the instructions. The fourth instruction given on behalf of defendant directly told the jury, that if "plaintiff received the injuries, of which he complains, by jumping or accidentally falling from defendant's train, they will find for the defendant."

III.    It is finally insisted that the judgment should be reversed because the jury were guilty of misconduct in the manner of arriving at their verdict; and because the damages awarded by the jury are excessive. Defendant presented affidavits tending to show that, soon after the jury returned the verdict, there was found on the table of the consultation-room a slip of paper indicating that twelve different sums had been set down and added up, and then divided by twelve, the quotient corresponding with the verdict; and that one of the jurors admitted that that was the way they reached a verdict. This was not sufficient to impeach the verdict. *McMurdock v. Kimberlin*, 23 Mo. App. 523. As to the amount of damages, if they were to be ascertained with reference alone to the physical injuries done to plaintiff, we should hold they were excessive. But the instruction authorized the jury to award the plaintiff smart money, if they found that the conductor had acted wantonly, cruelly, and regardless of the life or limb of the plaintiff. Crediting the plaintiff's evidence, which we must do in considering this question, there was sufficient evidence to warrant the jury in awarding punitive damages. We discover no reason in this record for interfering with the conclusion of the jury.

The other judges concurring, the judgment of the circuit court is affirmed.