SIMEON L. HALLIBURTON, Respondent, v. THE WABASH RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, April 30, 1894.

1. **Master and Servant:** DUTIES TO SERVANT. The master is required to consider the safety of the servant and should not expose him to needless hazards, whether it be in the tools, implements and machinery the servant uses, or the place or manner of doing the work.

2. ———: ASSUMPTION OF RISK. There are necessary risks attaching to the work which the ordinary care of the master can not provide against,—these the servant assumes and has no recourse on the master for injury resulting therefrom.

3. ———: OBEDIENCE: DANGER OF: CONTRIBUTORY NEGLIGENCE. The servant is under obligation to obey, but he is not justified in obedience to orders to enter a place of well known danger or attempt work attended with risk to life or limb; and if he does so, he will be guilty of contributory negligence.

4. ———: SUPERIOR POSSESSION OF MASTER: CONTRIBUTORY NEGLIGENCE. Master and servant do not stand upon an equal footing, even when they have equal knowledge of danger. The servant's position is subordinate and he has a right to rely upon the superior knowledge and skill of the master, and, in doing so, he is not guilty of contributory negligence unless the danger is so glaring that a reasonably prudent man would not have entered into it.

5. ———: OBEDIENCE: EVIDENCE: CONTRIBUTORY NEGLIGENCE. On the facts in this case, it can not be *held* as a matter of law that the plaintiff was guilty of contributory negligence in obeying an order as to the manner of placing drive wheels under a locomotive engine; nor can it be *held* that the manner in which the work was directed to be done was so palpably hazardous that he must have known it would

be attended with injury to himself and he could not avoid it by the exercise of care and caution; and that no man of ordinary prudence would have attempted it; and that as to this, there could be but one conclusion in the minds of ordinarily prudent persons. *Fugler v. Bothe*, 43 Mo. App. 44, *distinguished.*

6. ———: ASSUMPTION OF RISK: CONTRIBUTORY NEGLIGENCE. The action of the court in giving and refusing instructions is reviewed and approved and the instructions are held not contradictory.

*Appeal from the Randolph Circuit Court.*—HON. JOHN A. HOCKADAY, Judge.

AFFIRMED.

*F. W. Lehmann* and *George S. Grover* for appellant.

(1) As the danger of moving these large wheels in the manner in which it was done was one obvious to the senses, and plainly one which would necessarily imperil the life and limbs of plaintiff, he assumed the risk of doing the work in that particular manner at that time, and, therefore, can not recover from defendant for any injury so received. *Devitt v. Railroad*, 50 Mo. 302; *Aldridge v. Ins. Co.*, 78 Mo. 559; *Fugler v. Bothe*, 117 Mo. 475. (2) There is an irreconcilable conflict between the instructions given at the plaintiff's request and those given for the defendant, which necessarily confused and misled the jury, to the prejudice of the defendant. *Nichols, Shepard & Co. v. Jones*, 32 Mo. App. 657. (3) The verdict is excessive.

*Alexander H. Waller* for respondent.

(1) It is the duty of the servant to obey the master's orders, unless the act commanded be so obviously dangerous to the senses as to make obedience rashness amounting to contributory negligence on his part, and in such case the servant is not guilty of con-

tributory negligence, unless the danger is so glaring that a reasonably prudent person would not enter into it. *Herrimann v. Railroad*, 27 Mo. App. 443; *Kiegan v. Kavanaugh*, 62 Mo. 232; *Stephens v. Railroad*, 96 Mo. 211; *Cox v. Granite Co.*, 39 Mo. App. 429; *Shortel v. St. Joseph*, 104 Mo. 118; *McGee v. Railroad*, 92 Mo. 218; *Fusilli v. Railroad*, 45 Mo. App. 540. If, upon a given state of facts, negligence can be clearly asserted, then the court may so declare; but if reasonable minds may differ as to the conclusions to be drawn from the given facts, the question of negligence then becomes one of mingled law and fact and must be determined by the jury. The issue of plaintiff's alleged contributory negligence was submitted to the jury by instructions more favorable to defendant than it was entitled to, and the issue decided against defendant. *Barry v. Railroad*, 98 Mo. 70; *Wilkins v. Railroad*, 101 Mo. 106; *Maus v. City of Springfield*, 101 Mo. 618. (2) There is no conflict between plaintiff's first and defendant's third instruction. Instructions should be taken together and considered as a whole. And if, when so taken and considered, they correctly declare the law applicable to the facts of the case, they fulfill the requirements of the law. *Shortel v. City of St. Joseph*, 104 Mo. 121; *Phister v. Gove*, 48 Mo. App. 459; *Karle v. Railroad*, 55 Mo. 482; *Hohstadt v. Daggs*, 50 Mo. App. 242; *Pike v. Eddy*, 53 Mo. App. 510. (3) The verdict was not excessive. *Dougherty v. Railroad*, 97 Mo. 666; *Brown v. Railroad*, 99 Mo. 319.

GILL, J.—This is an action for damages for personal injuries received by the plaintiff, February 13, 1893, while working in defendant's machine and repair shops at Moberly, Missouri. Plaintiff and two others, Garnett and Phipps, composed what was called the "stripping gang," whose duty, among others, required

them to dismantle and readjust the engines that might be there repaired. The substantial portion of the petition reads as follows: "That on said day said stripping gang was engaged in the work of placing the drive wheels of one of defendant's engines undergoing repairs in said shop to their places under said engine. That said drive wheels consisted of three pairs, one pair of which was without flanges, and were known as 'blind drivers.' That said drive wheels were of great weight and required to be so placed under said engine by means of a drop-pit in which a table or platform having thereon a railroad track, upon which said drive wheels were set, was raised and lowered by means of machinery under said engine until placed in proper position. That said blind drivers had to be first put under said engine, and hence first on said track on said table. That in consequence of said blind drivers having no flanges, as aforesaid, to hold or retain them on said track, it had been the usage and custom of said stripping gang in said shop to swing said blind drivers and thereby secure them, so as to prevent their falling off said track while said table was necessarily being raised and lowered to get other drive wheels in position, which said method was a safe and proper and prudent way to perform said work. That while plaintiff and other members of said stripping gang were proceeding at said time and place in the discharge of their duty to so place said drive wheels under said engine of defendant, defendant negligently and carelessly ordered said straw boss, Phipps, and through him this plaintiff and others of said stripping gang, not to swing said blind drivers, but to allow them to sit on the track and go up and down with the platform or table while the other drive wheels were being placed in position, which was a negligent, dangerous and unsafe way to perform said work. That in obedience to said negligent order so

given by the defendant, as aforesaid, said blind drivers were not swung and in this way secured, and that while plaintiff and other members of said stripping gang were engaged in the work of getting said other drive wheels·in place, said blind drivers suddenly fell off said track onto plaintiff's foot breaking the bones thereof, and tearing and mangling the flesh, tendons and other parts of said foot to such an extent that his little toe had to be amputated and a portion of his foot removed, so that plaintiff is permanently crippled, injured," etc. The answer was a general denial of the material allegations of the petition with plea of contributory negligence.

The testimony in behalf of the plaintiff tended to establish about the following state of facts: That Halliburton, Garnett and Phipps composed the "stripping gang" in the Moberly shops, Phipps being the head man of the three or "straw boss," and that one M. T. Phillips was the foreman, having charge of this stripping gang, and that they were subject to his orders. That on the thirteenth day of February, 1893, it became the duty of plaintiff and said Phipps and Garnett to place the wheels under a "ten-wheeler" engine by means of a "drop-pit," having a track thereon, the table of the "drop-pit" being raised and lowered by machinery. That the first wheels to be placed in position under the engine were drive wheels of great weight, without flanges, and somewhat beveled on the edges of the tires, known as "blind drivers." That to accomplish the work of placing the several pairs of wheels belonging to the engine in place it was necessary to place a pair at a time on the table of the "drop-pit," then lower the table by means of the machinery which operates the same; then roll the pair of wheels to their proper position under the engine; then elevate said table so as to bring the wheels up

between the jaws of the engine and until the track on said table was in line with the track on the floor of the shop; then roll on the second pair of wheels; again lower the table; roll these wheels in place also; again elevate the table as before, and so on until, all the wheels of the engine were in proper place and ready for the machinists to complete the work. That prior to said day it had been the usual and invariable custom of said stripping gang to secure the blind drivers by "swinging" them. These blind drivers by reason of their position under engines were always the first to be placed in position, and the usage had been to roll them onto the track on the table, lower the table as heretofore explained, then roll them along the table track to their proper place under the engine, bring the table up so as to bring the wheels between the jaws of the engine as aforesaid, then by means of bolts called "pedestal bolts" so fasten the wheels between the jaws that they would swing there while the table was being raised and lowered to get the other wheels in position. The evidence further showed that this was a safe and prudent way to do the work. That on the day in question just at the time that plaintiff, Phipps and Garnett, had rolled the blind drivers onto the table to place them under the engine, Phillips, their foreman, came to the straw boss, Phipps, and ordered him not to swing the blind drivers any more. Phipps asked him "why can we not do it? we have always put them on that way." Phillips answered, with an oath, "that is the order I give you, and you must follow it." Phillips further directed Phipps to roll the blind drivers under and to steady them with a little block on each side. Phipps and his two assistants, plaintiff and Garnett, then in obedience to said order undertook to place the wheels in their respective positions under the engine without swinging the blind drivers, and whilst proceeding to do

so the blind drivers, being unsecured, slipped off the rails onto plaintiff's foot and at the same time injured Garnett also. The evidence further tends to show that plaintiff was at his post of duty where he ought to have been and that the way foreman Phillips ordered the work to be done was an unsafe way; that the table was not steady while in motion, ascending or descending, but quivered so that the blind drivers, being without flanges and unsecured, were liable to be displaced or shaken off the rails.

The case was submitted to a jury under instructions from the court, resulting in a finding and judgment for plaintiff in the sum of $1,500 and defendant appealed.

I. Reversal is asked on three grounds: *First*, that a demurrer to the evidence should have been sustained, because, admitting the defendant's negligence, the danger in performing the work of adjusting the wheels in the manner directed by the defendant's foreman, was so obvious to the plaintiff that to enter upon the work constituted negligence on his part, or that he assumed such patent risk; *second*, that there was a conflict in instructions; and, *third*, that the damages are excessive.

The general principles of law applicable to cases of this kind are so well understood that repetition has become tedious. The master is required to supply reasonably safe appliances for the use of the servant. He is required also to consider the safety of the servant and should not expose him to needless hazard as to the place where the work is prosecuted or the manner of its performance. Whether it be the tools, implements and machinery the servant is to handle or operate, or whether it be the place or the manner of doing the work, it is made the duty of the employer to carefully guard and protect the life and limb of the employee.

VOL. 58—3

Of course in the prosecution of many kinds of business there are necessary risks, such as attach or belong to the work, and which even the ordinary care of the master can not provide against. These the servant assumes, and for injuries resulting therefrom he can have no recourse on the master. While the servant is under the obligation to obey the master, he will yet not be held blameless when in obedience to such orders he enters into a place of well known danger or attempts the doing of work in a manner which is manifestly attended with risk to life and limb. In such case the servant would be guilty of contributory negligence which would bar his recovery. However that situation or condition of things which would convict the master of negligence will not necessarily constitute contributory negligence in the servant, for, as repeatedly said: "The master and servant do not stand upon an equal footing, even when they have equal knowledge of the danger. The position of the servant is one of subordination and obedience to the master, and he has the right to rely upon the superior knowledge and skill of the master. The servant is not entirely free to act upon his own suspicions of danger. If therefore, the master orders the servant into a place of danger, and the servant is injured, he is not guilty of contributory negligence, *unless the danger was so glaring that a reasonably prudent person would not have entered into it.*" *Shortel v. City of St. Joseph,* 104 Mo. 114. Or as expressed by this court in the *Herriman case* (27 Mo. App. 435): "It is the plain duty of the servant, in such relation, to obey the direction and command of his superior, unless the act directed be so obviously dangerous to his senses as to make obedience rashness, amounting to contributory negligence on his part." Judge BLACK in *Stephens v. Railroad* (96 Mo. 207) uses this language: "There may be cases where the servant is ordered to do a par-

ticular act, and the order is so unreasonable, and the act so manifestly dangerous to life and limb, that the court, on the evidence, should declare the servant guilty of negligence in obeying the order of the master and should direct a nonsuit. The general rule, however, is that the question is one for the jury." And further along the learned judge says: "The servant is not, at the peril of being discharged, bound to set up his judgment against that of his master about things over which there can be a difference of opinion in the minds of reasonably prudent persons." And again it has been held that, even though there be apparent danger in obeying the master's order, yet such knowledge on the part of the servant will not defeat recovery "if it was not so dangerous as to threaten immediate injury, or if he might have reasonably supposed that he could safely work about it by the use of care and caution, and that he did use all the care incident to the situation in which he was placed." *Huhn v. Railroad*, 92 Mo. 440.

Now in order to sustain the contention of defendant's counsel, in the case at bar, we must hold, that Halliburton, when ordered to adjust these drive wheels without "swinging," must have seen and known that so to do would probably be attended with injury to himself, and that he could not avoid it by the exercise of care and caution; that such danger was so obvious that no man of ordinary prudence would have attempted it, but would have abandoned the service of the company rather than undertake the work in the manner directed; and we must hold, too, that as to this there could be but one conclusion in the minds of ordinarily prudent persons.

We can not say this. We are not prepared to declare that obedience in this case was so threatening to life and limb, so palpably attended with danger that

an ordinarily prudent workman would have rebelled and declined the performance. Although this manner of handling the wheels was different from that uniformly adopted, and though the plaintiff may have had some fears of the result, still mere suspicion on his part was not enough. He had a right to rely on the superior knowledge and skill of the defendant's foreman. He was justified in the belief that though it appeared to him somewhat hazardous to do the work as ordered, yet that the foreman knew better than he, or that at all events it might be performed with safety by the exercise of care on his part.

The facts of this case are materially different from those of *Fugler v. Bothe*, 43 Mo. App. 44, which was transferred to the supreme court where the dissenting opinion of Judge ROMBAUER was adopted. There an experienced mechanic was engaged in doing some carpenter's work standing on a narrow projection in the interior of a building. He lost his balance and fell to the ground floor receiving injuries from which he died, and his widow sued for damages. There were no defects in the plank on which Fugler stood; the trouble was that the place was so narrow that the man could not handle himself thereon with safety. And the decision was put on the express ground that the servant in that case knew *much better than the master* whether or not he could handle his body on that space without losing his balance.

Considering the facts of the case at bar, as testified to by plaintiff and his witnesses, we must hold that the court properly declined to give a peremptory instruction for the defendant.

II. As to the second and third points presented in defendant's brief we discover no just cause of complaint. There is no conflict between plaintiff's instruction number 1 and defendant's number 3. The first

was clearly predicated on facts upon which defendant could be charged and was qualified by telling the jury that plaintiff must have been conducting himself "without negligence on his part contributing thereto," and defendant's number 3 advised the jury what would constitute this contributory negligence on plaintiff's part. It told the jury, that, though they should find the facts upon which the plaintiff sought to recover, the defendent was negligent in ordering the work done in an unsafe manner, etc., "yet if they further find from the evidence that the danger of so placing said wheels under said engine without swinging said wheels was plainly apparent and manifestly hazardous to the life and limbs of plaintiff while so engaged in said work, then they are instructed that plaintiff assumed the risk of obeying said orders of said defendant to so place said wheels without swinging them, and can not recover in this action for such injuries so received, and your verdict should be for the defendant."

Judgment affirmed. All concur.