HARRIET L. MAUERMAN, Respondent, v. ST. LOUIS, IRON MOUNTAIN AND SOUTHERN RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, May 13, 1890.

1.   **Railroads**: NEGLIGENCE. When one, who is not a trespasser, is injured on railroad tracks by being run over by an engine of the railroad company, and the accident occurs in a city, and is due in part to a disregard of municipal regulations, the railway company is liable for the injury, notwithstanding contributory negligence on the part of the injured person, if those in charge of its engine saw, or by the exercise of ordinary care could have seen, the perilous condition of that person in time to have averted the injury.

Mauerman v. The St. Louis, I. M. & S. Ry. Co.

2. **Practice, Appellate:** WEIGHING THE EVIDENCE IN ACTIONS AT LAW. While appellate courts in this state may grant new trials for the reason that the verdict was against the weight of the evidence, the exercise of the power is confined to the cases where the verdict is so strongly opposed to all reasonable probabilities as to be the manifest result of mistake, bias or prejudice.

3. **Instructions:** NOT PREDICATED ON EVIDENCE. It is error in an action by a mother for personal injury to her minor child to direct the jury to include, in the assessment of the damages, the value of the care given by the mother to such son owing to the injuries received by him, if there is no evidence of the value of such care.

4. **Damages:** PARENT AND CHILD. A mother on the death of her husband succeeds to the obligations of the latter towards their minor child, and, therefore, if such child receives personal injury through the negligence of another, and if the mother in compliance with her obligations actually supports him thereafter during his minority, she is entitled in the assessment of the damages to all the wages which the child could have earned during its minority, without any deduction for or on account of the support of the child.

*Appeal from the St. Louis City Circuit Court.*—Hon Daniel D. Fisher, Judge.

Affirmed.

*Henry G. Herbel*, for appellant.

(1) The court erred in overruling the demurrers to the evidence offered by defendant at the close of plaintiff's case, and at the close of the whole case. *Loeffler v. Railroad*, 96 Mo. 270; *Yarnell v. Railroad*, 75 Mo. 584; *Rogstad v. Railroad*, 14 Am. & Eng. R. R. Cases, 648; *Taylor v. Railroad*, 86 Mo. 463; *Sloop v. Railroad*, 22 Mo. App. 596; *Diel v. Railroad*, 37 Mo. App. 454; *Milburn v. Railroad*, 21 Mo. App. 431; *Cone's Adm'r v. Railroad*, 14 West. Rep. 100; *Artz v. Railroad*, 34 Iowa, 153; *Anderson v. McPike*, 86 Mo. 300; *Bene v. Jeantet*, 129 U. S. 683; *Peterson v. Case*, 18 Am. & Eng. R. R. Cases, 581. (2) The court erred in refusing the instructions asked by defendant. *Rafferty v. Railroad*, 91 Mo. 37; *Henry v. Railroad*,

76 Mo. 295; *Yarnell v. Railroad*, 75 Mo. 584. (3) The court erred in giving the instructions asked by plaintiff. *Turner v. Railroad*, 76 Mo. 262; *Loeffler v. Railroad*, 96 Mo. 270; *Bell v. Railroad*, 86 Mo. 608; *Prior v. Railroad*, 69 Mo. 218; *Judd v. Railroad*, 23 Mo. App. 64. (4) The court erred in giving the instructions of its own motion. *Bell v. Railroad*, 86 Mo. 612; *Eisenberg v. Railroad*, 33 Mo. App. 85; *Fath v. Railroad*, 39 Mo. App. 447; *Rafferty v. Railroad*, 91 Mo. 37; *Meyers v. Trust Co.*, 82 Mo. 237; *Duke v. Railroad*, 12 S. W. Rep. 636.

*D. P. Dyer*, for respondent.

(1) The trial court could not properly withdraw the cause from the jury on the ground of contributory negligence. *First.* Because the evidence was not so decisive as to warrant the court in declaring, as a matter of law, that there was such contributory negligence. *Second.* Because there was substantial evidence to the effect that there was no contributory negligence at all. *Third.* Because, even if the plaintiff's son was guilty of contributory negligence, the defendant was liable if its servants could, by the exercise of reasonable care, have discovered her son's danger in time to have avoided the accident. *Guenther v. Railroad*, 95 Mo. 286; *Dunkman v. Railroad*, 95 Mo. 232; *Sullivan v. Railroad*, 97 Mo. 113; *Bergman v. Railroad*, 88 Mo. 678; *Welsh v. Railroad*, 81 Mo. 466.. (2) The fact that the accident occurred on these yards of the defendant does not relieve the defendant from liability on any theory on which the cause was submitted to the jury. *Merz v. Railroad*, 88 Mo. 672; 14 Mo. App. 459; *Kelly v. Railroad*, 18 Mo. App. 160; 95 Mo. 285, 286; 2 Shearman & Redfield on Neg., sec. 484, and note 1, p. 298; *Sullivan v. Railroad*, 97 Mo. 119. (3) The specific objections made to the individual instructions are not well taken. The use of the terms, "due" and "proper," were not

erroneous, nor was it prejudicial under the evidence in this cause. *Donahoe v. Railroad*, 83 Mo. 543; Thompson on Trials, sec. 1731; *Dahlstrom v. Railroad*, 103, 104. (4) The instruction on the *quantum* of damages is not erroneous. *Parsons v. Railroad*, 94 Mo. 296; *Googan v. Foundry Co.*, 87 Mo. 326; 14 Mo. App. 588; *Nagel v. Railroad*, 75 Mo. 653.

ROMBAUER, P. J.—The plaintiff is the surviving parent of Peter Mauerman, who, at the date of the accident hereinafter mentioned, was a minor. She brought this action to recover the value of his services between the date of the accident and the date of his arriving at age, and, upon a trial before a jury, recovered a verdict for one thousand and twenty-seven dollars. The defendant, appealing, assigns for error that the court overruled its demurrer to the plaintiff's evidence; that it misdirected the jury in its instructions; that the verdict is excessive, and that the court erred in not sustaining the defendant's motion for new trial.

The place where the accident occurred was in the defendant's switch-yards in the city of St. Louis. The time of the accident was near midnight. These switch-yards, as shown by the evidence, consist of seventeen or more parallel tracks, with a main or lead track on the western side thereof, which, near the place of the accident, was straight for several hundred feet on either side. The switch-engine, with tender attached, was going southwardly at a slow rate of speed on this lead track, when it struck and ran over plaintiff's son. A number of streets, running east and west, cross this switch-yard at right angles. The plaintiff's version of the accident, as detailed by her son, was as follows:

The plaintiff's son Peter was in the employ of an electric lighting company, which had a contract with the defendant for lighting these yards. The lights were suspended on poles about thirty-five feet above the ground, and it was the duty of plaintiff's son to see

that they were kept burning and to renew their carbons from time to time. One of these lights was on the west side of the yard near Marian street, and one diagonally across and one block southeast of the yard on Carroll street. The plaintiff's son testified that he had just renewed the carbon in this western light, and, on descending from the pole, had dropped his pliers on or near defendant's track. He stepped upon the track, and, in doing so, looked and listened for an approaching engine ; not seeing nor hearing any, and not hearing the sound of any bell, he bent down to search for his pliers, and while in that position was struck by the engine, and received the injuries complained of. The plaintiff also gave in evidence the ordinance of the city of St. Louis, which requires engines moving within the city limits to ring their bells constantly while in motion.

We cannot see how, on this evidence, the court could have nonsuited the plaintiff. Her son was lawfully in the place where he was injured, and, as far as his evidence shows, was guilty of no contributory negligence. Whether his evidence was true or not, was, even in the light of defendant's evidence, a question for the jury, but, for the purposes of a demurrer to its legal effect, must be presumed to be true.

The defendant's answer contained the plea of contributory negligence, which was denied by the reply, the reply containing the further averment that the defendant's servants could have avoided the injury by using reasonable efforts to stop the engine, after they saw, or by use of ordinary care could have seen, the perilous position of Mauerman.

The defendant's evidence, a correct epitome of which is set out in the brief of its counsel, was in substance as follows : The engine was moving southwardly, on what was known as the "lead" track, at a speed of less than six miles per hour, on its way to its

destination,—the round-house at Lesperance street. There were aboard of it the engineer, the fireman, the foreman of the engine crew, and his two helpers who were standing on the foot-board in front of the engine. The foreman had been ringing the bell of the engine as it approached Miller street, which was distant about three hundred feet north of the point of the accident ; but, as the engine passed over Miller street, he ceased ringing the bell and began oiling 'the engine, as it was his custom to do at that place ; his engineer was likewise so engaged, though not having to leave his· seat while so occupied. The bell continued to sound until the engine reached a point about one hundred and fifty feet north of the accident. There are five switch-frogs between Miller street and the point of the accident, over which the engine ran, making a noise which could be heard for several hundred feet; the headlight of the engine was burning brightly, and the engineer and crew on the front of the engine were looking south along the track in the direction the engine was running. When they reached a point fifteen or twenty feet north of the place where Mauerman was struck, one of the helpers standing on the foot-board in front of the engine discovered an object on the track, the character of which he could not distinguish at the distance, but he immediately signaled the engineer with his lantern to stop. His signal was immediately acted upon by the engineer, and the engine was stopped within thirty feet, but too late to avoid striking Mauerman, who was sitting on the west rail of the track asleep with his head upon his knees, directly beneath and in the shadow of the electric light. None of the men in front of the engine saw Mauerman before the engine got within fifteen or twenty feet of him, and the engineer did not see him until he got the signal from the helper to stop, for the reason, as they testified, that Mauerman was sitting in the shadow produced by the electric light, which was of

such intensity as to render an object indiscernible until a person entered its orbit, which was about thirty feet in diameter. The track on which appellant's engine was moving was perfectly straight for a distance of from three hundred to five hundred feet north of the point of the accident, and, if plaintiff had looked, he could have seen the engine, and if he had listened he could have heard it. Plaintiff's son within an hour before the accident had drunk five Jumbo glasses of beer, each of which had a capacity of one quart, at a saloon situated within a few blocks of the scene of the accident; and he was seen a half hour previous to the accident in a hilarious and half-drunken mood, his condition being such that one of his associates then cautioned him against attempting to do any more work that night. While convalescing at the defendant's hospital he told a sister of charity, who was nursing him, that he had been drinking the night of the accident, and had sat down upon the track and fallen asleep, and was struck by the engine. Two or three days after he was brought to the hospital he told the attending physician that he was injured while sitting on the rail of the track and having a stool.

The plaintiff, in opposition to this, introduced evidence tending to show that, owing to the height of the electric light, there was no shadow; that a person lying on the ground in the center of the alleged shadow could have been seen at a distance of four hundred feet; that the engine, at the rate of speed at which it was running, could have been stopped, and when plaintiff was discovered was actually stopped, within thirty feet, and that the headlight of the engine would have enabled the engineer, if he had been on the lookout, to see an object on the ground for a distance of one hundred feet. This evidence had a tendency to show that the real reason, why Mauerman's position was not discovered, was that the engineer and fireman were not on the lookout, but were engaged in oiling the engine.

This being in substance all the evidence, the court upon its own motion instructed the jury as follows:

"The court instructs the jury that, if they find from the evidence that plaintiff's son Peter Mauerman at the time of the accident was sitting upon the west rail of the so-called "lead" track of defendant's railway, in its yards between Carroll and Miller streets in the city of St. Louis, with his head lying upon his arms and in a position that prevented him from seeing an engine approaching him on said track, and that, while in such position, he was struck by one of defendant's engines that was running southwardly on said track, and injured, then in that event the jury will find for the defendant, unless they shall further find from the evidence that defendant's servants in charge of said engine, after seeing or knowing that plaintiff was in a perilous position, *or after being able to see or know by the exercise of ordinary care that he was in a perilous position*, failed to do all they reasonably could to avoid striking him and thus avert the injury.

" If the jury believe from the evidence that Peter Mauerman, plaintiff's son, at the time of the accident remained upon the so-called "lead" track of defendant's railway in its yards between Carroll and Miller streets in the city of St. Louis in a position that prevented him from seeing an engine or train approaching him on said track from the north, and that, at the time of the accident, while remaining on said track, he was paying no attention to his own safety, and, while there in such position, he was struck by one of defendant's engines that was running southwardly on said track, and injured, then the jury will find a verdict for defendant, unless the jury shall find, further, from the evidence, that defendant's servants in charge of said engine, after seeing or knowing that he was in a perilous position on said track, *or after being able to see or know by the exercise of ordinary care that he was in a perilous*

*position*, failed to do all they reasonably could to avoid striking him."

The instructions thus given were identical with two instructions asked by the defendant and refused by the court, excepting the words put in italics, which were added by the court against defendant's objections. Whether this modification was justified, is really the main question in the case.

We had occasion to say, in *Hudson v. Railroad*, 32 Mo. App. 678, that the supreme court has refined upon and conditioned the question of contributory negligence to such an extent, that it admits of serious doubt whether the defense is of any practical value to any railroad company in this state. If we apply to this case the rule as stated by that court in *Rine v. Railroad*, 88 Mo. 399, then the defendant's instructions should have been given without any modifications. If, on the other hand, we apply to it the rule as stated by a majority of the court in *Dunkman v. Railroad*, 95 Mo. 232, then the modification was proper. In the last of these cases a distinction is made between the liability of railroads for accidents in cities, where the disregard of municipal regulations is in part the cause of the accident. Here, the testimony concedes that the accident occurred in the defendant's yards intersected by numerous streets, and that the defendant's servants were guilty of a violation of the municipal regulation in failing to ring the bell of the engine constantly while it was in motion. Hence, under the rule stated in the *Dunkman case* which is the last controlling decision of the supreme court, and, as such, binding upon us, the modification was proper. See, also, *Kelly v. Railroad*, 95 Mo. 285, 286. In the subsequent case of *Loeffler v. Railroad*, 96 Mo. 267, the jury specially found "that the servants in charge of the engine did not, *and, by the exercise of ordinary care, could not*, have known that plaintiff was in a dangerous place in time to have

seen him before he was struck by the car," and further specially found that the plaintiff had unnecessarily and voluntarily placed himself in a dangerous position; hence, a judgment for the defendant upon the conceded facts was unavoidable. There is nothing in that case opposed to the ruling in the *Dunkman case*, as the jury specially found the facts which the court, in its modified instruction in the case at bar, submitted to them. Nor is there anything opposed to this view in *Rafferty v. Railroad*, 91 Mo. 33, which does not hold, as the defendant claims, that the municipal ordinances do not apply to the running of engines and trains in the railroad yards, but simply that, when cars are moved detached from an engine, there is no necessity for ringing the bell on an engine which is standing. This assignment of error, therefore, must be ruled against the defendant.

Objection is made to the use of the words, " due care and proper use of the means at hand," used in the plaintiff's instructions given. Since the court, upon its own motion, defined the care, to which the defendant was bound, as reasonable care, we cannot see how the use of the words complained of in plaintiff's instructions could have been prejudicial to the defendant.

The assignment of error, that the court erred in overruling the defendant's motion for a new trial, we conceive to be a complaint that the verdict is against the weight of the evidence, and that the trial court should have set it aside, and hence erred in failing to do so. While appellate courts in this state may grant new trials for the reason that the verdict is against the weight of the evidence, the exercise of the power is confined to cases where the verdict is so strongly opposed to all reasonable probabilities as to be the manifest result of mistake, bias or prejudice. It is the duty of the trial court to grant a new trial, when in its opinion the verdict is opposed to the weight of the evidence, but,

as this is a duty which depends on the view which that court takes of the evidence, it is one which the appellate court cannot control, except in the cases above stated.

The defendant's complaint that the verdict is excessive is without merit. The plaintiff's son at the date of the accident was engaged at monthly wages of sixty dollars per month. He had been in the same employ for years, and there was no evidence tending to show that he could not have continued in such employ at the same wages for the period elapsing between the accident and the date of his majority, which was nineteen months and seven days thereafter. He was living with the plaintiff, who supported him, and received his wages. He was totally disabled by his injuries. The cause was tried after the plaintiff's son had arrived at age. There was evidence that the plaintiff had incurred expenses for medical attendance and medicines in certain definite sums, but there was no evidence what the care or nursing given to him during the period of his being laid up was worth.

The court on the question of damages instructed the jury as follows :

"The court instructs the jury that, if they find for the plaintiff, they will assess her damages at such a sum as the evidence shows she has been injured by reason of the loss of her said son's services, so far as such loss was occasioned by reason of his injuries during the period between the date of the accident and the time when he arrived at the age of twenty-one years, together with such sums as will compensate her for the money she expended for medicine and medical attendance and the care she gave him during that period on account of his injuries, less such amount as you shall find from the evidence to have been the reasonable cost of his board, washing and clothing during that period."

This instruction was erroneous in submitting to the jury the value of the care given to her son during the

period in which he was laid up, on account of his injuries, there being no evidence of such value before the jury, and this was an error against the defendant; but that was more than equalized by requiring the jury to deduct the reasonable cost of the board, washing and clothing during the entire period.   Under the decisions of this court in *Girls' Industrial Home v. Fritchey*, 10 Mo. App. 344, and *Matthews v. Railroad*, 26 Mo. App. 75, the mother on the death of the father succeeds to the duties and obligations of her husband touching minor children.   If this be so, the fact that her son was disabled did not discharge her of the obligation to support him, even though he could earn nothing, and his support was a dead loss to her.   She did in fact support him until he became of age, hence, as she was both under obligation to support him and did support him, and lost his entire wages, such wages were not subject to deduction except for the period of time while the plaintiff's son was in the defendant's hospital.   As the wages would have amounted to eleven hundred and fifty-two dollars, and the recovery was for one thousand and twenty-seven dollars, it is evident that the verdict on the uncontroverted evidence was not excessive.   All the judges concurring, the judgment is affirmed.