SOLOMON ADLER et al., Respondents, v. CHARLES WAGNER, Appellant.

### St. Louis Court of Appeals, November 24, 1891.

1. **Practice, Appellate:** VACATING JUDGMENTS OPPOSED TO THE EVIDENCE. Appellate courts will vacate a judgment at law on the ground that it is opposed to the evidence, only when the verdict is so strongly opposed to all reasonable probabilities as to be the manifest result of passion or prejudice.

2. **Sales:** DELIVERY. In the case of joint purchase, delivery to either one of the purchasers will be sufficient.

3. **Practice, Trial:** STIPULATIONS. Parties may by written stipulation, filed of record, narrow the issues in any case.

*Appeal from the St. Louis City Circuit Court.*—HON. JACOB KLEIN, Judge.

AFFIRMED.

*Chester H. Krum,* for appellant.

*Silas B. Jones,* for respondent.

BIGGS, J.—The plaintiffs sued the defendant for goods sold and delivered. The jury returned a verdict for the amount sued for, with interest added, and the court entered judgment on the verdict. The defendant

has appealed and complains that the verdict is clearly against the evidence ; that there was no evidence of a delivery of the goods to the defendant, and that an instruction given by the court in the plaintiff's motion is erroneous. We will examine the assignments in the order stated.

I. Appellate courts may vacate judgments as opposed to the weight of the evidence, but the exercise of the power is confined solely to cases where the verdict of the jury, or that of the court sitting as a jury, is so strongly opposed to all reasonable probabilities as to be the manifest result of passion or prejudice. *Mauerman v. Railroad*, 41 Mo. App. 348. If the evidence does not bring the present case within this rule, the defendant's first assignment must be ruled against him.

It was conceded that, prior to March, 1888, the defendant and his brother, E. J. Wagner, were doing business together as dry-goods merchants in the city of Ogden, Utah, and also in Laramie City, Wyoming, and that the plaintiffs at the time and for several years prior thereto were engaged in the wholesale dry-goods business in the city of St. Louis, and had sold to the defendant and his brother several bills of goods. According to the testimony of the defendant and his brother, their partnership was dissolved in March, 1888, by the defendant selling his interest in both establishments to his brother, who thereafter conducted the business in his own name. The goods in controversy were purchased in August, 1888, on sixty days' time, and were shipped by rail to E. J. Wagner & Co., Laramie City. Before the expiration of the credit E. J. Wagner failed. The defendant admitted that he accompanied his brother to the plaintiffs' place of business at the time of the purchase, but he claimed that he had nothing whatever to do with the purchase, except to introduce his brother to a member of the firm, and to ask the terms of sale ; that his brother made the purchase in his own name and upon his individual

credit; that he notified the plaintiffs that he had sold his interest in the firm, and that the business was being conducted by his brother on his individual account. The testimony of the defendant and his brother was very clear and explicit in respect of the foregoing matters, which are the vital points in the case. On the other hand the plaintiffs' salesman testified that he had sold the goods to both of the parties; that the defendant assisted in buying the goods, in fact was the chief actor in the purchase; that the defendant did not notify him that he had sold out to his brother, but said that the firm had changed, and was then conducted under the name of E. J. Wagner & Co. This witness also testified that, after the failure of E. J. Wagner & Co., he presented the bill in suit to the defendant, and that the defendant agreed to pay it. In addition to the testimony of this witness, we find that of Mr. Adler, a member of the firm. After the goods had been selected, the defendant and his brother had an interview with Mr. Adler concerning the terms of the sale. We find the following in the latter's testimony concerning that interview: "Mr. August (salesman) I believe sent for me; that the gentlemen wanted to see me. I did not know that they were in the house. I walked up. Mr. Wagner, I believe, introduced me to his brother.

"Q. Do you mean by Mr. Wagner this gentleman here,—Charles Wagner? A. Charles Wagner, yes, sir, introduced me to his brother and asked me about the terms.

"Q. Who asked you? A. Wagner. I didn't know the other brother at all. Mr. Charles Wagner asked me about the terms.

"Q. What did he say, as near as you recollect it? A. Well, so I told Mr. Wagner that it was cash or something, I don't recollect, but I think it was that, and Mr. Wagner, I believe, told me that he bought them previous to that, on sixty or ninety days; I don't recollect so well, but anyhow I believe it was sixty or ninety

days, and I told Mr. Charles Wagner that I would look it up, and see whatever the terms were on the other goods that I sold to him, and that I would give him the same terms, and that was all that was said, and the gentlemen walked out." Mr. Adler also testified that he was not advised of any change in the original firm. Mr. Adler and the salesman were flatly contradicted by the defendant and his brother, and we may go so far as to say that there are some inferences to be drawn from the evidence of both Adler and the salesman that are favorable to the defendant's contention. However, when the entire evidence is considered, we have simply a case of conflicting testimony, with the weight, in our opinion, in favor of the defendant, and not a case where it can be fairly said that the finding of the jury is opposed to all reasonable probabilities. We will, therefore, rule this assignment against the defendant.

II. It is next insisted that there was no evidence of a delivery to the defendant. If the purchase was in fact a joint one, and the jury so found, the delivery could not be controverted under the record. The defendant filed the following stipulation, which was read in evidence. "In the above cause it is stipulated as follows: That the defendant will not at the trial of this case dispute the amount of the goods mentioned in plaintiff's petition, or the price charged therefor as stated in the petition, or that the said goods were shipped by plaintiffs by railroad about the twenty-second of August, 1888, to Laramie City, Wyoming, under a bill of lading consigning the same to E. J. Wagner & Co., but that the defendant claims, and will claim, that said goods were sold to Edward J. Wagner only, and not to this defendant, and that the defendant is not in any manner liable to pay plaintiff for said goods." In joint purchases, delivery to either one of the purchasers will be sufficient. We will have to rule this assignment likewise against the defendant.

III.   Lastly, the defendant complains of the follow-ing instruction :   "The court instructs the jury that, if the defendant and one E. J. Wagner purchased the goods in controversy of the plaintiffs, and that the same have not been paid for, then the fact, if the jury find from the evidence that such is the fact, that the defend-ant had no interest in said purchase, but that said goods were purchased for the benefit of E. J. Wagner alone, will not relieve the defendant from liability to pay for said goods, unless at the time of said purchase the plaintiffs had notice that such goods were being pur-chased alone for the benefit of E. J. Wagner, or had notice that the defendant was not to be liable for the payment of said goods."

The defendant's criticisms of· this instruction are, that it failed to state what facts in law constitute a pur-chase, and that it failed to explain to the jury what was meant by notice.   The first objection is not tenable, for the reason that the fact that there was a purchase was admitted in the stipulation.   Parties may by writ-ten stipulation, filed of record, narrow the issues in any case.   In the present case the only matter to try was simply this :   Was the defendant a joint purchaser of the goods, or did he merely accompany his brother to the store as a spectator ?   The object of the instruction was to inform the jury that, if they found that the defendant was a joint purchaser, the fact that he had no personal interest in the goods, when purchased, would not affect his liability as such purchaser, unless the plaintiffs at the time of the purchase had notice— that is, knowledge or information—that the purchase was for the benefit of E. J. Wagner only.   We cannot conceive how the jury could have misunderstood this instruction, or in what manner the defendant was prej-udiced by it.

The judgment of the circuit court will be affirmed. All the judges concurring, it is so ordered.